# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| EVOL, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:09-cv-01839-O |
| | § | |
| SUPPLEMENT SERVICE, LLC d/b/a | § | |
| MUSCLEMEDS, | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO TRANSFER

Craig W. Weinlein
  State Bar No. 21095500
Prescott W. Smith
  State Bar No. 24013534
CARRINGTON, COLEMAN, SLOMAN
  & BLUMENTHAL, L.L.P.
901 Main Street, Suite 5500
Dallas, TX 75202-3767
Telephone:  214/855-3000
Telecopy:   214/855-1333
cweinlein@ccsb.com
psmith@ccsb.com

Robert J. Schoenberg
RIKER DANZIG SCHERER HYLAND
  & PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
Telephone:  973/451-8511
Telecopy:   973/451-8604

*Attorneys for Defendant Supplement
Service, LLC d/b/a MuscleMeds*

APP 48



Case 3:09-cv-01839-O     Document 11     Filed 12/03/2009     Page 2 of 12

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

LEGAL ARGUMENT.................................................................................................2

I.    THE ACTION SHOULD BE TRANSFERRED TO THE DISTRICT OF NEW JERSEY CONSISTENT WITH FIFTH CIRCUIT CASE LAW .........................................2

    A.    Plaintiff Erroneously Urges This Court To Base Its Decision Not On Fifth Circuit Law, But On The Argument Of A MuscleMeds Affiliate In An Unrelated Matter.........................................2

    B.    Evol's Argument That Transfer Should Be Denied Because Unrelated Matters "Might" Be Consolidated Is Misleading And Lacks Merit. ...........................................................................4

    C.    Recent Fifth Circuit Court Decisions Have Held That A Party Seeking Transfer Need Not Name Its Key Witnesses And Summarize Their Testimony...................................................6

CONCLUSION...........................................................................................................8

CERTIFICATE OF SERVICE ..................................................................................9

**APP 49**

## TABLE OF AUTHORITIES

Page(s)

CASES

*Gulf Oil Corp. v. Gilbert,*
   330 U.S. 501 (1947)..................................................................3

*Humble Oil & Ref. Co. v. Bell Marine Serv. Inc.,*
   321 F.2d 53 (5th Cir. 1963)........................................................3

*In re Volkswagen,*
   545 F.3d 304 (5th Cir. 2008) .............................................3, 7, 8

*Odom v. Microsoft Corp.,*
   596 F. Supp. 2d 995 (E.D. Tex. 2009) ........................................7

*Piper Aircraft Co. v. Reyno,*
   454 U.S. 235 (1981).................................................................7

*Young v. Armstrong World Indus. Inc.,*
   601 F. Supp. 399 (N.D. Tex. 1984)........................................6, 7


STATUTES

28 U.S.C. § 1404(a) ...............................................................3, 8

APP 50

## PRELIMINARY STATEMENT

Defendant Supplement Services, LLC, d/b/a MuscleMeds ("MuscleMeds" or "Defendant") submits this reply brief in further support of its motion to transfer venue.

The opposition brief of Plaintiff Evol, Inc. ("Evol" or "Plaintiff") fails to provide a legally cognizable basis for denying Defendant's motion. Instead, Evol props up its opposition with three unsound arguments:

1. Plaintiff erroneously argues that Defendant MuscleMeds should somehow be bound by the previously asserted arguments of its affiliate, Maximum Human Performance Inc. ("MHP") in an unrelated matter, irrespective of Fifth Circuit law on venue transfer;

2. Plaintiff erroneously argues that the possibility of consolidation of unrelated cases with distinctly different facts, parties, and law should prevent transfer (such a motion was filed by Dymatize Enterprises Inc. ("Dymatize"), an affiliate of Evol, on November 18, 2009);

3. Plaintiff erroneously contends that Fifth Circuit law requires the moving party to identify its witnesses and anticipated testimony, as a condition of venue transfer.

For the foregoing reasons, this Court should grant Defendant's motion and transfer this action to the District of New Jersey.

APP 51

## LEGAL ARGUMENT

I.   **THE ACTION SHOULD BE TRANSFERRED TO THE DISTRICT OF NEW JERSEY CONSISTENT WITH FIFTH CIRCUIT CASE LAW**

   A.   *Plaintiff Erroneously Urges This Court To Base Its Decision Not On Fifth Circuit Law, But On The Argument Of A MuscleMeds Affiliate In An Unrelated Matter.*

   Plaintiff argues that this Court should deny MuscleMeds' motion to transfer venue because MHP, a MuscleMeds affiliate, in an unrelated matter, argued as a Plaintiff against the transfer of venue.[1]   A motion to transfer venue should be adjudicated on its own merits and applicable law.   The fact that MHP advanced a different position in a different case with different facts in a different judicial circuit is not legally relevant.   Evol argues:

   > The interest of justice disfavors awarding Defendant and Defendant's attorneys, for arguing contrary positions when presented with the same facts.   As such, the interest of justice weighs heavily against transfer.

(Evol's Opposition Brief dated Nov. 18, 2009 ("Evol Br.") at 5).

   Evol's opposition to the instant transfer motion fails to address the outcome in the New Jersey case, and the basis for the opinion issued by Magistrate Judge Salas.   There, in deciding a motion to transfer venue in favor of Dymatize, an Evol affiliate, Magistrate Judge Salas found transfer appropriate to the forum where the defendant and the defendant's key witnesses were located, because the burden to produce the key witnesses rested with the defendant:

   > Dymatize's marketing, shipping, manufacturing research, and development takes place in Texas.   MHP's false advertising and unfair competition claims arose out of activities that allegedly took place at Dymatize's headquarters in Texas.   Proof of MHP's claims will turn on evidence demonstrating whether Dymatize and/or

---

[1] The referenced case was *Maximum Human Performance v. Dymatize Enterprises, Inc.*, United States District Court, District of New Jersey, Case No. 2:09-cv-00235 (PGS).   On Dymatize's motion to transfer, the Court transferred the case to the Northern District of Texas, and it bears Civil Action No. 3:09-cv-1719 (hereinafter referred to as "Case Two").

> Casid designed and implemented the alleged false advertising campaign in Texas. Witnesses to the alleged false advertising and unfair competition are likely to be officers and/or employees of Dymatize, all of whom are located in Texas. In addition, all books, records and information relating to the design, selection and implementation of the alleged false advertising campaign are located in Texas.

(*See* Def. Reply App. at pp. 15-16 [Opinion of Magistrate Salas at pp. 13-14]).

Evol fails to cite any Fifth Circuit law supporting its assertion that MuscleMeds is bound by a well-reasoned argument made by MHP, its affiliate, in an unrelated case opposing a venue transfer. This Court should not be distracted by Plaintiff's meritless "contrary position" argument but should adjudicate the merits of this transfer motion pursuant to Fifth Circuit law interpreting 28 U.S.C. § 1404(a), which provides that <u>for the convenience of parties and witnesses</u>, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The Fifth Circuit has adopted the standard of "good cause" which the moving party must meet in order to warrant transfer of venue pursuant to § 1404(a). In determining whether the "good cause" standard has been met, the Court must analyze the circumstances presented under the private and public interest factors first enunciated by the Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), and subsequently adopted by the Fifth Circuit in *Humble Oil & Ref. Co. v. Bell Marine Serv. Inc.*, 321 F.2d 53, 56 (5th Cir. 1963). (Defendant's Br. In Support of Mot. to Transfer at p. 5).

This Court, following the criteria set out in *In re Volkswagen*, 545 F.3d 304, 315 (5th Cir. 2008), should find that the Defendant's witnesses are the key witnesses in this action, and these witnesses are located in New Jersey; that Defendant's principal place of business is in New Jersey and Evol's false advertising and unfair competition claims arose out of activities that allegedly took place at MuscleMeds' headquarters in New Jersey. Here, all documents relating to the advertising statements for the products that Evol contends are false are located in New

3

**APP 53**

Jersey. (*See* App. in Support of Defendant's Mot. to Transfer at pp. 1-2 [Dente Decl. ¶¶ 4-6]). These factors, along with those set forth in MuscleMeds' opening brief, overwhelmingly establish that for the convenience of the parties and witnesses, and in the interest of justice this case should be transferred to the District of New Jersey.

> B.   *Evol's Argument That Transfer Should Be Denied Because Unrelated Matters "Might" Be Consolidated Is Misleading And Lacks Merit.*

Evol urges this Court to once again abandon Fifth Circuit case law, and instead rely on the possibility of a consolidation of unrelated cases as the basis to deny Defendant's venue transfer motion. The Motion to Consolidate filed by Evol's affiliate Dymatize on November 18, 2009, seeks to consolidate unrelated matters which are comprised of different facts, different parties, and different causes of action.[2]

Throughout Evol's opposition to this motion, Evol makes several specious arguments that the instant motion should be denied due to the "possibility of consolidation." By illustration, Evol says:

> The mere possibility of consolidation, tied with the fact that Defendant affiliates and President are currently involved in extensive litigation in the Northern District of Texas strongly weighs against transfer.

*       *       *

---

[2] The first case is *Dymatize Enterprises, Inc. v. Maximum Human Performance, Inc.*, Civil Action No. 3:09-cv-0046 (hereinafter referred to as "Case One"). Case One was originally filed by Dymatize on January 9, 2009, but amended on October 23, 2009 to add six antitrust causes of action. The second case is *Maximum Human Performance, Inc. v. Dymatize, Inc.*, Civil Action No. 3:09-cv-1719 (hereinafter referred to as "Case Two"). Case Two was originally filed by MHP in the United States District Court for the District of New Jersey on January 16, 2009, but subsequently transferred to this Court. The third case is *Dymatize Enterprises, Inc. v. Maximum Human Performance, Inc., Gerard Dente, and Supplement Services, LLC, d/b/a MuscleMeds*, Civil Action No. 3:09-cv-1840 (hereinafter referred to as "Case Three"). Dymatize filed Case Three on September 29, 2009. The fourth case is the instant matter, *Evol, Inc. v. Supplement Services, LLC, d/b/a MuscleMeds*, Civil Action No. 3:09-cv-1839 (hereinafter, "Case Four"). Evol filed Case Four on September 29, 2009.

4

**APP 54**

Defendant will have to produce witnesses and evidence in the Northern District of Texas, many of which may overlap with the instant case. Considering the foregoing, denying the transfer will promote judicial economy and efficiency, and reduce the possibility of inconsistent judgments.

*     *     *

Defendant and Defendant's affiliates are involved in four cases currently pending before the Court. Consequently, there is a possibility that the instant case and Dymatize II will be consolidated with the two previously consolidated cases.

(Evol Br. at 3-4).

As set forth in Defendants' Response and Brief in Opposition to Plaintiff's Request for Consolidation of the Four Cases,[3] an analysis of the procedural history of these cases demonstrates that Evol never believed that the cases were ripe for consolidation--until MuscleMeds filed its transfer motion. By way of example:

- It was Evol, and its affiliate Dymatize, that elected to file Case Three and Case Four as separate actions on September 29, 2009. If Evol and Dymatize truly believed these actions to be legally and factually similar it could easily have filed a single lawsuit on that day.

- Dymatize initiated the litigation by filing Case One in this Court on January 9, 2009. If Dymatize truly believed that all these cases were similar enough to consolidate, it could have moved in Case One to amend its pleadings and to join other parties and claims.

- On October 12, 2009, MHP and Dymatize filed an unopposed motion to consolidate Case One and Case Two. At that time, Dymatize made no mention of any intention to later seek to consolidate the other unrelated cases filed on September 29, 2009.

Of even greater significance, the cases which are the subject of Dymatize's motion to consolidate are dissimilar on the issues of law, facts, and parties. The following points briefly highlight these major factual differences:

- MuscleMeds, a defendant in this action, is also a defendant in Case Three, but is not a plaintiff or defendant in Cases One or Two.

---

[3] Filed in Cause No. 3:09-cv-1840-O on November 23, 2009, Docket No. 18.

5

APP 55

- MuscleMeds and MHP are affiliates, but are legally distinct and separate entities. Each entity independently markets, sells, and distributes its own nutritional supplement products through distributors and on its own website. (*See* Def. Reply App. at pp. 18-19 [Dente Decl. at ¶¶ 2-3]).

- Gerard Dente is a party to Case Three, but not a party in any of the other three actions.

- Evol is a plaintiff in this case, but not a party in any of the other three actions.

- Case One and Case Two both are based upon MHP's claim that Dymatize's advertising for its Elite 12 product is false and misleading. Case Three and Case Four are based upon Dymatize's claim that MHP's and MuscleMeds' advertising for its products are false and misleading.

- Case Three and Four involve entirely different products from the single Dymatize product ("Elite 12") at issue in Cases One and Two. All advertising for the products at issue in Cases Three and Four are entirely different from the advertising at issue in Cases One and Two. Thus, the key witnesses and documents in Case One and Two are Dymatize's and the key witnesses and documents in Cases Three and Four are MHP's and MuscleMeds'. (*See* Def. Reply App. at p. 19 [Dente Decl. at ¶ 3]).

- Dymatize recently amended its complaint in Case One to assert six new antitrust causes of action for monopolization and restraint of trade. None of the other three cases involve such antitrust claims and complex legal and discovery issues associated therewith. (*See* Def. Reply App. at pp. 24-30 [Dymatize Amended Compl. at ¶¶ 20-49]).

For the above reasons, the pending transfer motion should be decided on the merits and based on Fifth Circuit law, and not influenced by a belated motion for consolidation, filed by Evol's affiliate, Dymatize, which was filed for the sole purpose of interfering with this transfer motion.

### C. *Recent Fifth Circuit Court Decisions Have Held That A Party Seeking Transfer Need Not Name Its Key Witnesses And Summarize Their Testimony*

Evol erroneously argues in its opposition brief that, under *Young v. Armstrong World Indus. Inc.*, 601 F. Supp. 399 (N.D. Tex. 1984), the movant in a motion to transfer venue is required to specifically identify its key witnesses that will be produced at trial:

> Because Defendant failed to specify key witnesses to be called, make a general
> statement of what their testimony will cover, and identify any unwilling witnesses
> whose testimony would need to be compelled, Defendant has failed to prove that
> the availability of compulsory process weighs in favor of transfer

(Evol Br. at 9). Evol's position is flawed: *Young* is not the law in the Fifth Circuit.

In *In re Volkswagen*, 545 F.3d 304 (2008), the Fifth Circuit addressed the issue of whether a party seeking a transfer of venue was required to identify all key witnesses, and summarize their testimony:

> The Singletons argue that Volkswagen has not provided affidavits from these
> individuals indicating what specific testimony they might offer, has not explained
> why such testimony is important or relevant, and has not indicated that such
> testimony is disputed. In the forum non conveniens context, however, we have
> rejected 'the imposition of a blanket rule requiring affidavit evidence.'

*Id.* at 317. (citations omitted). In reaching that conclusion, the Court adopted the United States Supreme Court holding in *Piper Aircraft Co.* rejecting the contention "that defendants seeking forum non conveniens dismissal must submit affidavits identifying the witnesses they would call and the testimony these witnesses would provide if the trial were held in the alternative forum." *Id.* at 317 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981)).

Thus, the Fifth Circuit has made clear, in the context of a motion to transfer venue, that there is no "blanket rule" requiring witness identification. The Eastern District of Texas has applied the Fifth Circuit's holding in *Volkswagen* to conclude there is no requirement to identify specific witnesses in the context of a motion to transfer. *See Odom v. Microsoft Corp.*, 596 F. Supp. 2d 995, 1001-02 (E.D. Tex. 2009) (not requiring defendants to identify all of its potential witnesses for purposes of a motion to transfer venue).

Defendant's opening brief, which notes that all personnel related to quality assurance, distribution, sales, accounting, shipping, purchasing, research and development, and marketing are located in New Jersey (*see* App. In Support of Mot. to Transfer at p. 2 [Dente Decl. at ¶ 5]),

APP 57

sufficiently satisfies the private interest factor enunciated in *Volkswagen* relating to the cost of attendance for willing witnesses. As noted in Defendant's opening brief, it is apparent that it would be more convenient for substantially all the witnesses if the trial were held in the District of New Jersey, as the Northern District of Texas is approximately 1500 miles from New Jersey.

## CONCLUSION

For all the foregoing reasons, the defendant, Supplement Services, LLC d/b/a MuscleMeds respectfully requests that the Court transfer this action to the District of New Jersey, pursuant to 28 U.S.C. §1404(a).

Respectfully submitted,

/s/ Prescott W. Smith
Craig W. Weinlein
  State Bar No. 21095500
Prescott W. Smith
  State Bar No. 24013534
CARRINGTON, COLEMAN, SLOMAN
  & BLUMENTHAL, L.L.P.
901 Main Street, Suite 5500
Dallas, TX 75202-3767
Telephone:  214/855-3000
Telecopy:    214/855-1333
cweinlein@ccsb.com
psmith@ccsb.com

Robert J. Schoenberg
RIKER DANZIG SCHERER HYLAND
  & PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
Telephone:  973/451-8511
Telecopy:    973/451-8604

*Attorneys for Defendant Supplement Service, LLC d/b/a MuscleMeds*

8

**APP 58**

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 3rd of December, 2009, pursuant to Federal Rule of Civil Procedure 5 and Northern District Local Rule 5.1(d), a true and correct copy of this document was served upon all attorneys of record, via ECF electronic mail.

David W. Carstens
Casey L. Griffith
CARSTENS & CAHOON, LLP
13760 Noel Road, Suite 900
Dallas, Texas 75240

/s/ Prescott W. Smith
Prescott W. Smith

**APP 59**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EVOL, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:09-cv-01839-O |
| SUPPLEMENT SERVICE, LLC d/b/a | § | |
| MUSCLEMEDS, | § | |
| | § | |
| Defendant. | § | |

APPENDIX TO DEFENDANT'S REPLY BRIEF
IN SUPPORT OF ITS MOTION TO TRANSFER VENUE

Defendant Supplement Services, LLC, d/b/a MuscleMeds, herewith files the following

Appendix to its Reply Brief in Support of Its Motion to Transfer Venue.


| DOCUMENT | APPENDIX PAGE |
|---|---|
| Opinion of Magistrate Judge Salas (Dated August 27, 2009) | 3 |
| Declaration of Gerard Dente In Opposition To Plaintiff's Request For Consolidation of the Four Cases | 18 |
| Plaintiff's First Amended Complaint in Cause No. 3:09-cv-46 | 20 |


Dated:  December 3, 2009.

APP 60

Respectfully submitted,


/s/ Prescott W. Smith
Craig W. Weinlein
    State Bar No. 21095500
Prescott W. Smith
    State Bar No. 24013534
CARRINGTON, COLEMAN, SLOMAN
    & BLUMENTHAL, L.L.P.
901 Main Street, Suite 5500
Dallas, TX 75202-3767
Telephone:  214/855-3000
Telecopy:    214/855-1333
cweinlein@ccsb.com
psmith@ccsb.com

Robert J. Schoenberg
RIKER DANZIG SCHERER HYLAND PERRETTI, LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
Telephone:  973/451-8511
Telecopy:    973/451-8604

*Attorneys for Defendant Supplement Services, LLC,
d/b/a MuscleMeds*


## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of this document was served upon all attorneys of record pursuant to Northern District Local Rule 5.1(d) and Federal Rule of Civil Procedure 5, via ECF electronic mail on this 3rd day of December, 2009.


/s/ Prescott W. Smith
Prescott W. Smith


2

Case 3:09-cv-01839-O   Document 16-3   Filed 03/15/10   Page 15 of 44   PageID 292
Case 3:09-cv-01839-O   Document 11-2   Filed 12/03/2009   Page 3 of 52

Case 2:09-cv-00235-PGS-ES   Document 17   Filed 08/27/2009   Page 1 of 15

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

-----------------------------------------------------X
                                                     :
Maximum Human Performance, Inc. :
                                                     :
          Plaintiff,                                 :
                                                     :          Civil Action 09-235 (PGS)
                                                     :
                                                     :     **OPINION & ORDER and**
          v.                                         :     **REPORT & RECOMMENDATION**
                                                     :
Dymatize Enterprises, Inc.                           :
and Michael Casid,                                   :
                                                     :
          Defendants.                                :
-----------------------------------------------------X

This matter comes before the Court on Plaintiff's Motion to Stay Prosecution of an Action Filed in the Northern District of Texas (Docket Entry No. 6) and Defendants' Motion to Dismiss, Stay, or Transfer Venue to the Northern District of Texas (Docket Entry No. 9). For the reasons set forth below, the undersigned **DENIES AS MOOT** Plaintiff's Motion to Stay. Pursuant to Local Civil Rule 72.1(a)(2), the Honorable Peter G. Sheridan, United States District Judge, referred Defendants' Motion to Dismiss, Stay, or Transfer Venue to the Northern District of Texas to the undersigned for report and recommendation. For the reasons set forth below, the undersigned recommends **GRANTING** Defendants' Motion to Transfer Venue to the Northern District of Texas.

### I. BACKGROUND

This action was instituted by Plaintiff Maximum Human Performance, Inc., ("MHP"), a New Jersey corporation with its principal place of business in Fairfield, New Jersey, against Dymatize Enterprises, Inc. ("Dymatize"), a Texas corporation with its principal place of business

in Farmers Branch, Texas, and Michael Casid ("Casid"), a Texas citizen, by way of Complaint dated January 16, 2009.

Plaintiff is engaged in the business of marketing and distributing food and nutritional supplements. (Compl. ¶ 11.) Since September 2004, Plaintiff has sold Probolic®-SR, a nutritional supplement which employs a patented sustained release technology to deliver proteins and amino acids over a twelve-hour period after ingestion. (*Id.* ¶¶ 14-15.) Defendant Dymatize distributes, advertises, and promotes food and sports nutritional supplements in New Jersey and throughout the United States. (*Id.* ¶ 18.) On or about December 2007, Dymatize began to distribute, advertise, and promote Elite 12, a protein nutritional supplement which competes directly with MHP's Probolic®-SR. (*Id.* ¶ 17.)

By way of Complaint, Plaintiff contends that both print and media advertisements produced, distributed, published, and/or authorized for publication by Dymatize contains false, misleading, and/or deceptive statements about its Elite 12 product line. (*Id.* ¶ 19.) Plaintiff also argues that Defendant Casid, in his capacity as an executive officer of Dymatize, planned, approved, supervised, and/or carried out the alleged false advertising for Dymatize's Elite 12 product line. (*Id.* ¶ 20.) Plaintiff is now seeking injunctive relief and monetary damages for violations of the Lanham Act, 15 U.S.C. § 1125(a), and the New Jersey Fair Trade Act, N.J.S.A 56:4-1 *et seq.*, as well as for common law unfair competition.

On December 4, 2008, MHP President Gerard Dente ("Dente") contacted Dymatize and spoke with Casid about the validity of Dymatize's Elite 12 advertising claims. (Casid Cert. ¶ 4.) Dente offered to settle Plaintiff's claims if Dymatize agreed to suspend the marketing and sale of its Elite 12 products. Without such an agreement, Dente indicated that he would "find it

-2-

Case 3:09-cv-01839-O   Document 16-3   Filed 03/15/10   Page 17 of 44   PageID 294
Case 3:09-cv-01839-O   Document 11-2   Filed 12/03/2009   Page 5 of 32

Case 2:09-cv-00235-PGS-ES   Document 17   Filed 08/27/2009   Page 3 of 15

necessary to file a lawsuit." (Dente Cert. ¶ 12.) Despite the threat of suit, Casid neither indicated to Dente that Dymatize would suspend the marketing or sale of its Elite 12 products nor requested that Dente refrain from filing suit. (Casid Cert. ¶¶ 5-6.) Casid notified Dente that consultation with his technical staff was necessary to determine the validity of Dymatize's Elite 12 advertising claims, and he would contact him again in one week. (Casid Cert. ¶ 9, Dente Cert. ¶ 12.)

On December 11, 2008, Dymatize's outside counsel, Casey Griffith ("Griffith"), contacted Dente by telephone. (Dente Cert. ¶ 13.) According to Dente, this conversation was "virtually identical" to his December 4, 2008 conversation with Casid. (Dente Cert. ¶ 13.) Dente reiterated his claims regarding Dymatize's Elite 12 products and signaled that MHP would file a lawsuit "unless [Dymatize] produced evidence that it actually had the technology" to substantiate its advertising claims. (Dente Cert. ¶ 13.) Dente asked Griffith, "Where do we go from here?", to which Griffith replied that he needed to consult with his client. (Dente Supp. Cert. ¶ 4.) Based on this conversation, Dente assumed that Dymatize had entered into settlement negotiations, (Dente Supp. Cert. ¶ 4.), but Casid refutes this claim. (Casid Cert. ¶ 7.)

On or about January 8, 2009, Dymatize sent to Plaintiff technical documentation related to its Elite 12 products. (Casey Cert. ¶ 7, Dente Cert. ¶ 15.) On January 9, 2009, Dymatize filed a declaratory judgment action in the United States District Court for the Northern District of Texas (the "Texas action") (Dente Cert. ¶ 16.), in which Dymatize seeks a declaration that its Elite 12 advertising claims do not constitute false advertising under the Lanham Act. (Dymatize Compl. ¶ 16, January 9, 2009.)

Plaintiff filed the present Complaint in the District of New Jersey (the "New Jersey

-3-

Case 3:09-cv-01839-O   Document 16-3   Filed 03/15/10   Page 18 of 44   PageID 295
Case 3:09-cv-01839-O   Document 11-2   Filed 12/03/2009   Page 6 of 32

Case 2:09-cv-00235-PGS-ES   Document 17   Filed 08/27/2009   Page 4 of 15

action") on January 16, 2009.  On March 2, 2009, Plaintiff filed a Motion to Stay Prosecution of Action Pending in the United States District Court, Northern District of Texas.  Plaintiff argues that an exception to the first-to-file rule is warranted because of Dymatize's bad faith and its anticipatory filing of the Texas action during ongoing settlement negotiations.  (Pl.'s Mot. 9.)

Defendants filed a Brief in Opposition to Plaintiff's Motion to Stay and a Motion to Dismiss, Stay, or Transfer on February 26, 2009.  Defendants assert that Dymatize did not engage in bad faith, that the Texas action is not an anticipatory filing, and that the New Jersey action should be dismissed or stayed pending resolution of the Texas action because the first-to-file rule applies.  Alternatively, Defendants argue that this case should be transferred to the Northern District of Texas.  (Defs.' Opp'n Br. 1, Defs.' Mot. 1.)

Plaintiff filed a Brief in Opposition to Defendants' Motion to Dismiss, Stay, or Transfer together with a Reply Brief in Support of its Motion to Stay on March 19, 2009, reiterating their previous claims against Defendants.

## II. DISCUSSION

### A.  Relevant Law

Plaintiff argues that the first-to-file rule should not apply because of Defendants' bad faith conduct, Defendants' anticipatory filing of the Texas action, and the absence of necessary causes of action and parties in the first-filed Texas action.  (Pl.'s Mot. 9-15.)

The first-to-file rule provides that "in all cases of federal concurrent jurisdiction, the court which first has possession of the subject matter must decide it." *EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988).  The doctrine is a "policy of comity" that "counsel[s] trial judges to exercise their discretion by enjoining subsequent prosecution of 'similar cases . . . in different

-4-

Case 3:09-cv-01839-O   Document 16-3   Filed 03/15/10   Page 19 of 44   PageID 296
Case 3:09-cv-01839-O   Document 11-2   Filed 12/03/2009   Page 7 of 32

Case 2:09-cv-00235-PGS-ES   Document 17   Filed 08/27/2009   Page 5 of 15

federal courts.'" *Id.* (citations omitted). Accordingly, the doctrine gives courts the power to dismiss, stay, or transfer a later-filed case. *Allianz Life Ins. Co. of N. Am. v. Estate of Bleich,* 2008 U.S. Dist. LEXIS 90720, at *7 (D.N.J. Nov. 6, 2008) (citing *Keating Fibre Int'l, Inc. v. Weyerhaeuser Co.,* 416 F. Supp. 2d 1048, 1052-1053 (E.D. Pa. 2006)).

For the first-to-file rule to apply, there must be a "substantial overlap" between the two actions, but the issues and parties involved need not be identical. *Siemens Fin. Servs. v. Open Advantage M.R.I. II L.P.*, No. 07-1229, 2008 U.S. Dist. LEXIS 15623, at *10 (D.N.J. Feb. 29, 2008); *Nature's Benefit, Inc. v. NFI*, No. 06-4836, 2007 U.S. Dist. LEXIS 62871, at *8 (D.N.J. Aug. 27, 2007) (citing *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997)); *GlaxoSmithKline Consumer Healthcare, L.P. v. Merix Pharm. Corp.*, No. 05-898, 2005 U.S. Dist. LEXIS 40007, at *26 (D.N.J. May 10, 2005) (citing *Specialty Ins. Agency, Inc. v. Walter Kaye Associates, Inc.*, No. 89-1708, 1989 U.S. Dist. LEXIS 6755, at *5 (D.N.J. June 7, 1989)).

Although exceptions to the first-to-file rule are rare, the rule is not a "rigid or inflexible rule to be mechanically applied." *EEOC*, 850 F.2d at 976 (citations omitted). Proper bases upon which a court may depart from the rule include (1) rare or extraordinary circumstances; (2) inequitable conduct; (3) bad faith; (4) forum shopping; (5) where the later-filed action has developed further than the first-filed action; and (6) "when the first filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum." *Id.* at 972, 976 (collecting cases). The plaintiff, however, "bears the burden of showing that special circumstances should bar its application." *GlaxoSmithKline Consumer Healthcare*, 2005 U.S. Dist. LEXIS 40007, at *28 (citing *Emerson Radio Corp. v. Emerson Elec. Corp.*, No. 89-1979, 1990 U.S. Dist. LEXIS 8796, at *39 (D.N.J. March 29, 1990)).

Appendix p. 7

APP 66

Case 3:09-cv-01839-O   Document 16-3   Filed 03/15/10   Page 20 of 44   PageID 297
Case 3:09-cv-01839-O   Document 11-2   Filed 12/03/2009   Page 8 of 32

Case 2:09-cv-00235-PGS-ES   Document 17   Filed 08/27/2009   Page 6 of 15

On a motion to dismiss or stay under the first-to-file rule, a court must take into account the same factors as those used in a motion to transfer pursuant to 28 U.S.C. § 1404(a) (which motion Defendants have also made). *Ivy-Dry, Inc. v. Zanfel Labs., Inc.*, No. 08-4942, 2009 U.S. Dist. LEXIS 53307, at *8-9 (D.N.J. June 24, 2009) (citing *Nature's Benefit*, 2007 U.S. Dist. LEXIS 62871, at *8-9). "If the factors balance in favor of the first to file rule, then a court may properly dismiss, stay or transfer the second-filed action to avoid duplicative litigation under its inherent power." *Nature's Benefit*, 2007 U.S. Dist. LEXIS 62871, at *9. "However, if the first-filed action is vulnerable to dismissal on jurisdictional grounds, the court in the second-filed action should stay or transfer said action rather than dismiss it outright." *Nature's Benefit*, 2007 U.S. Dist. LEXIS 62871, at *9 (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991)).

Pursuant to § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Although "the plaintiff's choice of venue should not be lightly disturbed," *Jumara*, 55 F.3d at 879 (citation omitted), that choice is not dispositive. *See In re Consolidate Parlodel Litigation*, 22 F. Supp. 2d 320, 323-24 (D.N.J. 1998). The defendant bears the burden of demonstrating that the alternative forum is more appropriate than the current one. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

In considering a motion to transfer an action, courts in the Third Circuit must balance both public and private interests to determine whether "the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum." *Jumara*, 55

-6-

Case 3:09-cv-01839-O   Document 16-3   Filed 03/15/10   Page 21 of 44   PageID 298.

Case 3:09-cv-01839-O   Document 11-2   Filed 12/03/2009   Page 9 of 32

Case 2:09-cv-00235-PGS-ES   Document 17   Filed 08/27/2009   Page 7 of 15

F.3d at 879.  The private factors include: (1) the plaintiff's choice of forum; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the expected witnesses; and (6) the location of books and records. *See id.* at 879. The public considerations include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding controversies; and (5) the public policies of the fora. *Id.* at 879-80.

### B.   *The First-to-File Rule*

Defendants argue that the first-to-file rule applies because the issues in the two current actions overlap substantially, the parties in the two actions are substantially similar, and there is no evidence that Defendants engaged in bad faith settlement negotiations or that the Texas action was an improper anticipatory filing.  (Def.'s Mot. 7-16.)

As Defendant Dymatize filed its complaint in the Northern District of Texas on January 9, 2009 and Plaintiff filed its complaint in the District of New Jersey on January 16, 2009, it is undisputed that the Texas action was filed before the New Jersey action.  (Dente Cert. ¶¶ 16-18.) The two actions are also based on the same subject matter – the validity of Dymatize's Elite 12 marketing claims.  (*Id.*)  Although Plaintiff correctly notes that the Texas action neither addresses its state law unfair competition claims nor includes Casid (Pl.'s Mot. 9), the issues and parties involved in the two actions need not be identical. *Nature's Benefit, Inc.*, 2007 U.S. Dist. LEXIS 62871, at *8.  Moreover, the test for unfair competition under New Jersey law is identical to the test for unfair competition under the Lanham Act. *Graco, Inc. v. PMC Global, Inc.*, No.

-7-

Case 3:09-cv-01839-O   Document 16-3   Filed 03/15/10   Page 22 of 44   PageID 299
Case 3:09-cv-01839-O   Document 11-2   Filed 12/03/2009   Page 10 of 32

Case 2:09-cv-00235-PGS-ES   Document 17   Filed 08/27/2009   Page 8 of 15

08-1304, 2009 U.S. Dist. LEXIS 26845, at \*92-93 (D.N.J. Mar. 31, 2009) (citing *AT&T v.*

*Winback & Conserve Program*, 42 F.3d 1421, 1433 (3d Cir. 1994)).

Plaintiff contends that this Court should depart from the first-to-file rule because of

Defendant's alleged bad faith.[1] (Pl.'s Opp'n Br. 8.)  In particular, Plaintiff alleges that the

parties were engaged in settlement discussions, that Defendants induced Plaintiff to delay filing

suit, and that Defendants secretly filed a declaratory judgment action in the Northern District of

Texas to avoid litigation in New Jersey. (Pl.'s Opp. Br. 10.)  While a court may properly depart

from the first-to-file rule if Defendants acted in bad faith, *see EEOC*, 850 F.2d at 972, the

Plaintiff bears the burden of showing that Defendants' misconduct should bar its application.

*GlaxoSmithKline Consumer Healthcare*, 2005 U.S. Dist. LEXIS 40007, at \*28 (citation

omitted).

Contrary to Plaintiff's contentions, neither the December 4, 2008 telephone conversation

between Dente and Casid nor the December 11, 2008 conversation between Dente and Griffith

initiated settlement negotiations. (Casid Cert. ¶¶ 5-9, Dente Cert. ¶¶ 11-13, Dente Supp. Cert. ¶¶

2-4.)  Defendant neither agreed to suspend marketing its Elite 12 products nor requested Plaintiff

to withhold filing suit. (Casid Cert. ¶¶ 5-8, Dente Cert. ¶¶ 11-12.)  Moreover, Plaintiff never set

forth a date certain after which it would file suit in New Jersey. (Casid Cert. ¶¶ 5-8, Dente Cert.

¶¶ 12-13.)  The Court finds that the most reasonable interpretation of those exchanges is merely

---

[1]

Plaintiff also asserts that the first-to-file rule should not apply because it is not subject to
personal jurisdiction in the State of Texas. (Pl.'s Opp'n Br. 11-19).  This Court, however, will
not address this argument, which is better left to the Northern District of Texas.  Even if the
Texas action is "vulnerable to dismissal on jurisdictional grounds," this Court should "stay or
transfer said action rather than dismiss it outright." *Nature's Benefit*, 2007 U.S. Dist. LEXIS
62871, at \*9 (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991)).

Case 3:09-cv-01839-O   Document 16-3   Filed 03/15/10   Page 23 of 44   PageID 300
Case 3:09-cv-01839-O   Document 11-2   Filed 12/03/2009   Page 11 of 52

Case 2:09-cv-00235-PGS-ES   Document 17   Filed 08/27/2009   Page 9 of 15

a haphazard agreement that Defendant would discuss its Elite 12 marketing claims with Plaintiff at some point in the future.

Plaintiff's assertions that the Defendants induced it to delay filing suit and that Defendants' filing of a declaratory judgment action in the Northern District of Texas constitutes a bad faith anticipatory filing are similarly without merit.   To support its contention that departure from the first-to-file rule is warranted, Plaintiff relies on *HPF, LLC v. Nu Skin Enters.*, 1999 U.S. Dist. LEXIS 15200 (E.D. Pa. Sept. 27, 1999).  There, the plaintiff filed a declaratory judgment action for non-infringement in the midst of active settlement negotiations with the defendant.  *See id.* at *1.  After receiving a complaint from defendant, plaintiff stated that it was willing to make "reasonable changes" to the disputed label and even sent defendant a proposed modified label.  *See id.* at *2.  Defendant deemed those changes insufficient, demanded that plaintiff suspend its marketing, and gave a date certain by which defendant expected plaintiff to respond to its demands.  *See id.* at *3.  Instead of continuing negotiations, plaintiff filed a declaratory judgment action in the Eastern District of Pennsylvania.  Defendant thereafter filed suit in the District of Utah.  Because of plaintiff's bad faith and the fact that the Utah action was further developed, the court departed from the first-to-file rule and transferred the case to the District of Utah.

Those factors are entirely absent in the case at bar.  Here, Defendants neither agreed to make "reasonable changes" to its Elite 12 product labels nor proposed to modify its Elite 12 marketing campaign.  (Casid Cert. ¶ 5.)  In fact, Defendants expressed no interest at all that they were interested in halting marketing the products in question.  (*Id.*)  Additionally, Plaintiff never

-9-

specified a date upon which it expected Defendants to respond to its demands.  (Casid Cert. ¶ 8,

Dente Cert. ¶¶ 12-13, Dente Supp. Cert. ¶¶ 3-4.)

   Plaintiff further relies upon *One World Botanicals v. Gulf Coast Nutritionals,* 987 F.

Supp. 317 (D.N.J. 1997).  There, the plaintiff filed suit against the defendant in the District of

New Jersey one week after defendant filed a declaratory judgment action in the Middle District

of Florida.  *See id.* at 321.  Plaintiff had sent a letter to defendant clearly indicating plaintiff's

intention to file suit against defendant unless it discontinued use of an infringing trademark.  *See*

*id.* at 329.  The letter also provided a 15-day period in which plaintiff would abstain from filing

suit while defendant remedied the situation.  *See id.*  Then defendant requested more time to

respond to the letter and plaintiff agreed.  Thereafter, defendant filed a declaratory judgment

action in the Middle District of Florida.  *See id.* at 321.  Although the court did not find bad

faith, it departed from the first-to-file rule because the later-filed New Jersey action had

developed further than the first-filed Florida action and defendant had instituted suit in Florida in

anticipation of the plaintiff's imminent suit in New Jersey.

   *One World* is also distinguishable from the present case.  Here, Plaintiff never articulated

a specific date upon which it expected Defendants to respond to its demands (Casid Cert. ¶ 7.)

and Defendants never requested an extension from such a date.   Plaintiff merely indicated that it

would file suit at some point in the future.  (Dente Cert. ¶¶ 12-13.)  Plaintiff's suit was thus not

imminent.  Moreover, Defendants did not file their declaratory judgment action in the Northern

District of Texas until January 9, 2009 (Dente Cert. ¶ 16.), nearly one month after Plaintiff's

final telephone conversation with Defendants.

-10-

The Court finds that Defendants' comments to Dente were insufficient to induce a reasonable person to delay filing suit. Simply stated, inducement requires some kind of an affirmative act or statement on the part of the Defendants. Neither are present in the case at bar. The Court further finds that Defendant Dymatize's filing of the Texas action does not constitute an anticipatory filing because Plaintiff never set forth a specific date on which it would file suit in New Jersey. After all, "declaratory judgment actions are by nature 'anticipatory[.]'" *Viacom Int'l, Inc. v. Melvin Simon Productions, Inc.*, 774 F. Supp. 858, 867 (S.D.N.Y. 1991). Therefore, under the circumstances of this case, the first-to-file rule applies.

Because the Court finds that the first-to-file rule applies to the instant action, this Court must allow the pending Texas action to proceed, and Plaintiff's Motion to Stay will be denied as moot.

### C. Defendants' Motion to Dismiss, Stay, or Transfer

Having decided that the Texas action, as the first-filed action, should proceed, this Court must now decide the appropriate course with respect to the present action. Defendants request that this action be dismissed, or, in the alternative, either stayed or transferred to the Northern District of Texas. On a motion to dismiss, stay, or transfer under the first-to-file rule, a court must take into account the same factors as those used in a motion to transfer pursuant to 28 U.S.C. § 1404(a). *Ivy-Dry, Inc. v. Zanfel Labs., Inc.*, No. 08-4942, 2009 U.S. Dist. LEXIS 53307, at *8-9 (D.N.J. June 24, 2009) (citing *Nature's Benefit*, 2007 U.S. Dist. LEXIS 62871, at *8-9). "If the factors balance in favor of the first to file rule, then a court may properly dismiss, stay or transfer the second-filed action to avoid duplicative litigation under its inherent power." *Nature's Benefit*, 2007 U.S. Dist. LEXIS 62871, at *9.

-11-

Case 3:09-cv-01839-O   Document 16-3   Filed 03/15/10   Page 26 of 44   PageID 303
Case 3:09-cv-01839-O   Document 11-2   Filed 12/03/2009   Page 14 of 52

Case 2:09-cv-00235-PGS-ES   Document 17   Filed 08/27/2009   Page 12 of 15

Pursuant to § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). An action might have been brought in another district if (1) venue is proper in that district and (2) that district can exercise jurisdiction over all defendants. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970). In a civil action based on federal question jurisdiction, venue is proper "in (1) a judicial district where any defendant resides . . . , [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]" 28 U.S.C. § 1391(b). For purposes of § 1391, a corporation is said to "reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c).

Here, it is undisputed that this action might have been brought in the Northern District of Texas. *See* 28 U.S.C. § 1391(a)(2) (venue is proper in any district where "a substantial part of the events . . . giving rise to the claim occurred"); *see also* 28 U.S.C. § 1391(a)(1) (venue is proper in any district where a defendant resides); 28 U.S.C. § 1391(c) (a corporate defendant resides in any district where it is subject to personal jurisdiction). Defendant Dymatize is incorporated in Texas, its principal place of business is in Texas, and Defendant Casid is a citizen of Texas residing in Texas. Venue is proper in the Northern District of Texas because Defendant Dymatize is subject to personal jurisdiction there, Defendant Casid resides there, and a substantial part of the events giving rise to MHP's false advertising and unfair competition claims occurred in Dymatize's headquarters in that District. Consequently, the instant matter might have been brought in the Northern District of Texas.

Although "the plaintiff's choice of venue should not be lightly disturbed," *Jumara*, 55

Appendix p. 14

APP 73

F.3d at 879 (citation omitted), that choice is not dispositive. *See In re Consolidate Parlodel Litigation*, 22 F. Supp. 2d 320, 323 (D.N.J.). The defendant bears the burden of demonstrating that the alternative forum is more appropriate than the current one. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

In considering a motion to transfer, courts in the Third Circuit must balance both public and private interests to determine whether "the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum." *Jumara*, 55 F.3d at 879. The private factors include: (1) the plaintiff's choice of forum; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the expected witnesses; and (6) the location of books and records. *Id.* at 879. The public considerations include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding controversies; and (5) the public policies of the fora. *Id.* at 879-80.

In the instant case, most of the private factors favor transfer to the Northern District of Texas. The sole private factor that weighs against transfer in this case is the plaintiff's choice of forum. Dymatize's marketing, shipping, manufacturing, research, and development take place in Texas. (Casey Cert. ¶ 3.) MHP's false advertising and unfair competition claims arose out of activities that allegedly took place at Dymatize's headquarters in Texas. Proof of MHP's claims will turn on evidence demonstrating whether Dymatize and/or Casid designed and implemented the alleged false advertising campaign in Texas. Witnesses to the alleged false advertising and unfair competition are likely to be officers and/or employees of Dymatize, all of whom are

-13-

**Appendix p. 15**

Case 3:09-cv-01839-O   Document 16-3   Filed 03/15/10   Page 28 of 44   PageID 305
Case 3:09-cv-01839-O   Document 11-2   Filed 12/03/2009   Page 16 of 52

Case 2:09-cv-00235-PGS-ES   Document 17   Filed 08/27/2009   Page 14 of 15

located in Texas. (Casey Cert. ¶ 4.)  In addition, all books, records, and information relating to
the design, selection, and implementation of the alleged false advertising campaign are located in
Texas.  (Casey Cert. ¶ 5.)  Even though the location of documents is generally entitled little
weight, *see Clark v. Burger King Corp.*, 255 F. Supp. 2d 334, 339 (D.N.J. 2003), the private
considerations weigh heavily in favor of transferring this case.

      The public considerations likewise weigh in favor of transfer.  Although neither party
suggests the judgment is less enforceable in either forum, Defendants contend that a more
expeditious resolution of this litigation can be had in the Northern District of Texas.  Indeed, this
District's docket is considerably more congested than that of the Northern District of Texas.[2]
This Court has noted, however, that the "relative congestion of the respective courts' dockets is
not a factor of great importance in this type of motion."  *Clark*, 255 F. Supp. 2d at 338 (citations
omitted).

      On the other hand, the fact that there is a related action pending in the Northern District
of Texas is a practical consideration of great importance in deciding a motion to transfer.  "To
permit a situation in which two cases involving precisely the same issues are simultaneously
pending in different District Courts leads to the wastefulness of time, energy and money . . . ."
*Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960).  "It is in the interests of
justice to permit suits involving the same parties and issues to proceed before one court and not

---

[2] For the twelve-month period ending on Sept. 30, 2008, there were 6,216 civil cases pending in
the District of New Jersey and only 3,037 civil cases pending in the Northern District of Texas.
*See* Administrative Office of the U.S. Courts, Judicial Business of the United States Courts:
2008 Annual Report of the Director, Table C-6, available at
http://www.uscourts.gov/judbus2008/JudicialBusinespdfversion.pdf (last visited June 22, 2009).
During the same period, the median time interval from filing to jury trial was 38.5 months in the
District of New Jersey and only 24 months in the Northern District of Texas.  *See id.* at Table C-
10.

Case 3:09-cv-01839-O   Document 16-3   Filed 03/15/10   Page 29 of 44   PageID 306
Case 3:09-cv-01839-O   Document 11-2   Filed 12/03/2009   Page 17 of 32

Case 2:09-cv-00235-PGS-ES   Document 17   Filed 08/27/2009   Page 15 of 15

simultaneously before two tribunals." *Job Haines Home for the Aged v. Young,* 936 F. Supp. 223, 233 (D.N.J. 1996) (quoting *Ricoh Co. v. Honeywell, Inc.,* 817 F. Supp. 473, 487 (D.N.J. 1993)). Accordingly, both the private and public interest factors favor transferring this action to the Northern District of Texas.

Because the Court is ruling on the basis of the first-to-file rule, it need not address Defendants' additional arguments relating to personal jurisdiction and lack of an indispensable party at this time.

### III. CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's Motion to Stay. In addition, the undersigned recommends that the Court GRANT Defendant's Motion to Transfer the action to the Northern District of Texas. Because this Court has decided to transfer the matter, Defendants' motion to dismiss or stay is denied as moot. Pursuant to Local Civil Rule 72.1, the parties have ten days from receipt of this Report and Recommendation to file and serve any objections.

s/Esther Salas
**HONORABLE ESTHER SALAS**
**UNITED STATES MAGISTRATE JUDGE**

-15-

Appendix p. 17

APP 76

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DYMATIZE ENTERPRISES, INC., | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. |
| | § | 3:09-cv-01840-O |
| v. | § | |
| | § | |
| MAXIMUM HUMAN PERFORMANCE, | § | |
| INC., GERARD DENTE, and | § | |
| SUPPLEMENT SERVICES, LLC d/b/a | § | |
| MUSCLEMEDS, | § | |
| | § | DEMAND FOR JURY TRIAL |
| Defendants. | § | |

**DECLARATION OF GERARD DENTE IN OPPOSITION TO PLAINTIFF'S REQUEST
FOR CONSOLIDATION OF THE FOUR CASES**

I, Gerard Dente, of full age, hereby declare as follows:

1.      I am President of both Maximum Human Performance, Inc. ("MHP") and Supplement Services, LLC, d/b/a MuscleMeds ("MuscleMeds"), who along with me are the Defendants in some of the various actions listed below. I submit this declaration in opposition to the Plaintiff's motion to consolidate two newly filed cases, *Dymatize Enterprises, Inc. v. Maximum Human Performance, Gerard Dente, and Supplement Services, LLC, d/b/a MuscleMeds*, Civil Action No. 3:09-cv-1840 ("Case Three") and *Evol, Inc. v. Supplement Services, LLC, d/b/a MuscleMeds*, Civil Action No. 3:09-cv-1839 ("Case Four"), with *Dymatize Enterprises, Inc. v. Maximum Human Performance, Inc.*, Civil Action No. 3:09-cv-0046 ("Case One") and *Maximum Human Performance, Inc. v. Dymatize, Inc.*, Civil Action No. 3:09-cv-1719 ("Case Two"). I have personal knowledge of the facts stated herein.

2.      MHP is a New Jersey corporation and MuscleMeds is a New Jersey limited liability company. MHP and MuscleMeds are separate and independent entities that are affiliates of each other as a result of common equity ownership. Each maintains separate books and records and separately files its own state and federal tax returns.

Appendix p. 18

APP 77

3.      As separate entities, MHP and MuscleMeds independently market, sell and distribute their own nutritional supplement products through distributors and retailers and on their own separate websites. By illustration, the product advertising for MHP's Probolic®-SR, ACTIVITE Sport, ANADROX Pump & Burn, Glutamine-SR and UP YOUR MASS, which advertising is the focus of Case Three, was designed and prepared by MHP, not MuscleMeds. On the other hand, the product advertising for MuscleMeds Arimatest and MethylBurn Extreme which advertising is the focus of Case Four, was designed and prepared by MuscleMeds, not MHP.

I certify under penalty of perjury that the foregoing statements made by me are true and correct. Executed on November 23, 2009.

GERARD DENTE

3998755.2

-2-

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| DYMATIZE ENTERPRISES, INC. | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO.** |
| | § | **3-09cv0046-0** |
| MAXIMUM HUMAN PERFORMANCE, | § | |
| INC. | § | |
| | § | **DEMAND FOR JURY TRIAL** |
| **Defendant.** | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

For its first amended complaint, Plaintiff Dymatize Enterprises, Inc. ("Dymatize"), by and through its attorneys Carstens & Cahoon, LLP, avers as follows:

### PARTIES

1.     Dymatize is a Texas corporation in good standing, with its principal place of business in Farmers Branch, Texas, which is within the Northern District of Texas.

2.     Defendant Maximum Human Performance, Inc. ("MHP") is a corporation organized under the laws of the State of New Jersey with its principal place of business at 21 Dwight Place, Fairfield, New Jersey 07004.

### VENUE AND JURISDICTION

3.     Subject matter jurisdiction is proper in this court because this litigation arises under federal law, namely *15 U.S.C. § 1051*, et seq. (Lanham Act), and 15 U.S.C. 1, et seq. (Sherman Act).  The Court therefore has jurisdiction over this action pursuant to *28 U.S.C. § 1331*, *28 U.S.C. § 1338(a)*, and *28 U.S.C. § 2201* (Declaratory Judgment Act).

4.     This Court has personal jurisdiction over the defendant because, upon information and belief, many of the defendant's products, including products that compete with Dymatize's

First Amended Complaint

**APP 79**

Page 1

Appendix p. 20

products, have been and continue to be sold within Texas and within this judicial district, at defendant's direction and with the defendant's knowledge.

5.    Venue is proper in this district under *28 U.S.C. §§ 1391(b)(2)*, as the defendant's allegations of unfair competition arise out of this district. The statements that the defendant contends constitute false advertising by Dymatize were created and adopted by Dymatize at its headquarters in this district. Moreover, the Dymatize products on which the defendant alleges statements constituting false advertising appear are marketed from Dymatize's headquarters in this district.

## FACTUAL BACKGROUND

6.    The defendant markets protein supplement products that allegedly "feed" muscles for 12 hours.

7.    Dymatize also markets protein supplement products. Among the advertising claims Dymatize uses in connection with its protein supplement products are "12 hour slogans".

8.    The defendant contends that the Dymatize 12 hour slogans are deceptive and constitute false advertising. Dymatize denies that its use of the 12 hour slogans in connection with its protein supplement products constitutes false advertising.

9.    Before this lawsuit was filed, the defendant threatened to institute legal action against Dymatize for using the 12 hour slogans in connection with its protein supplement products unless Dymatize ceased marketing products using the 12 hour slogans. During discussions between Dymatize and its agents and the defendant's president, the defendant's president stated that it licenses a patent on the "12 hour" technology from Vitaquest, Inc. ("Vitaquest"). The defendant's president also admitted that Dymatize does not infringe Vitaquest's patent.

**APP 80**

**First Amended Complaint**                                            **Page 2**

**Appendix p. 21**

10.   After this lawsuit was filed, defendant initiated a false advertising action against Dymatize in the United States District Court District of New Jersey for Dymatize's use of its 12 hour slogans.  In its own lawsuit in the District of New Jersey, the defendant has alleged:

(a)   It was the only supplement company providing a 12-hour sustained release protein product prior to December 2007.

(b)   Since December 2007, Dymatize has sold Elite 12,' a protein nutritional supplement which competes with MHP's Probolic – SR brand product.

(c)   The product labels for Elite 12 fail to list any ingredients which would extend the protein release period beyond the traditional period of between three and eight hours.

(d)   Dymatize's Elite 12 product is not the bioequivalent of MHP's Probolic-SR brand product and cannot deliver the appropriate protein supplementation for a period of 12 hours.

(e)   Defendant is losing sales of its Proboloic-SR brand product because Dymatize's Elite 12 product is less expensive.

11.   On April 7, 2009, Dymatize's counsel received a letter on behalf of Vitaquest from an attorney that also represents defendant in its false advertising dispute with Dymatize. That letter stated "Dymatize's advertising for its Elite 12 brand protein products has come to Vitaquest's attention."  It alleges that "the process used by Dymatize to formulate its Elite 12 products and achieve the extended release may come within and infringe its Elite 12 products and achieve the extended release may come within and infringe one or more claims" of the patent Vitaquest licensed to the defendant.  This allegation contradicted the defendant's president's admission that Dymatize was not infringing the Vitaquest patent.

12.    On April 23, 2009, the defendant's and Vitaquest's counsel again threatened to institute patent infringement litigation against Dymatize. Dymatize is not infringing Vitaquest's patent.

13.    On information and belief, the defendant has instituted its false advertising litigation against Dymatize for the purpose of restraining trade in 12-hour release protein products. Also, on information and belief, the defendant has conspired with Vitaquest or its agents to threaten groundless patent infringement litigation against Dymatize in furtherance of its restraint of trade.

## CLAIMS FOR RELIEF

## COUNT ONE

### Declaratory Judgment of No Lanham Act False Advertising

14.    Dymatize realleges and incorporates by reference the allegations in Paragraphs 1-13 above.

15.    The defendant claims that Dymatize's use of the 12 hour slogans in connection with its protein supplement products constitutes false advertising.

16.    Dymatize denies that its 12 hour slogans are literally false as a factual matter. Dymatize also denies that its 12 hour slogans implicitly convey a false impression, are misleading in context, or are likely to deceive consumers.

17.    Dymatize denies that its use of the 12 hour slogans has actually deceived or has the tendency to deceive a substantial segment of its audience.

18.    An actual, present, and justiciable controversy has arisen between Dymatize and the defendant concerning whether Dymatize's conduct constitutes false advertising under section 43(a) of the Lanham Act. Thus, the facts evince a substantial controversy between parties having adverse legal interests.

**APP 82**

First Amended Complaint

19.     Dymatize therefore seeks a declaratory judgment from this Court that its use of

the 12 hour slogans does not constitute false advertising under the Lanham Act.

## COUNT TWO

### Attempted Monopolization 15 U.S.C. § 2

20.     Dymatize realleges and incorporates by reference the allegations in Paragraphs 1-

19 above.

21.     As detailed below, defendant has engaged in predatory and anticompetitive

conduct in an attempt to intentionally monopolize the product and geographic markets described

herein in violation of section 2 of the Sherman Act, 15 U.S.C. § 2.

a.      Upon information and belief, and based upon its own representations, defendant

has enjoyed a monopoly with respect to a 12-hour release protein product.  As noted above,

defendant has acknowledged that MHP was the only nutritional supplement company providing

a 12-hour sustained release protein product to consumers prior to December 2007 and continuing

to this date.

b.      Upon information and belief, after learning that Dymatize had entered the "12-

hour sustained release" market, Defendants tried to coerce Dymatize out of the market by

threatening litigation,  eventually instigating sham litigation, and inducing Vitaquest or its agents

to help coerce Dymatize from the relevant market.

c.   ·    Upon information and belief, defendant licenses 12-hour sustained release

technology from Vitaquest.  Defendant noted that it licenses sustained release technology both in

its New Jersey complaint as well as in discussions with Dymatize.

d.      The cease and desist letter received from Vitaquest states that "the process used

by Dymatize to formulate its Elite 12 products and achieve the extended release may come

within and infringe one or more claims" of the patent owned by Vitaquest.

**First Amended Complaint**                                                    Page 5

e.      Upon information and belief, though Vitaquest's allegations and defendant's allegations originate from the same counsel, the allegations take conflicting positions; Defendant's allegations and statements through its president stress that Dymatize's products cannot and do not utilize any time release technology whereas Vitaquest's allegations assert that Dymatize's products do utilize time release technology.

f.      Upon information and belief, defendant induced Vitaquest to send a cease and desist letter to Dymatize regarding the 12-hour sustained release technology.  Upon information and belief, this inducement was another attempt by defendant to continue and extend the monopoly it previously enjoyed.

g.      Upon information and belief, defendant threatened to file actions, actually did file an action in New Jersey, and induced Vitaquest to threaten litigation, any or all of which constitutes sham litigation.  Upon information and belief, defendants are utilizing this sham litigation in an attempt to gain a monopoly and/or restrain trade.  Dymatize's belief with respect to the allegations of sham litigation are strengthened because of previous conversations with defendant's presdent who previously admitted on December 11, 2008 that Dymatize does not infringe Vitaquest's patent.  Accordingly, upon information and belief, defendant has engaged in unlawful sham litigation.

h.      Upon information and belief, defendant threatened or filed suit not for the purposes of seeking and ultimately obtaining any proper remedy due to it under the law but for purposes of forcing a legitimate business competitor from the market.

22.      Upon information and belief, defendant has engaged in such predatory and anticompetitive conduct with the specific intent to attempt to monopolize the relevant market and geographic market described herein.

23.     The relevant geographic market is the entire United States because both defendant and Dymatize sell or seek to sell their products to a nationwide group of customers and potential customers.

24.     The relevant market includes the 12-hour sustained release protein nutritional supplements.

25.     Defendant's conduct was in interstate commerce.

26.     For the reasons discussed herein, there is a dangerous probability that unless corrected defendant's predatory and anticompetitive conduct will result in defendant's re-attaining monopoly power in the relevant market.  Specifically, as discussed, before Dymatize entered the relevant market, defendant has admitted to being the only supplement company providing a 12-hour sustained release protein product.  Upon information and belief, defendant intends to regain and sustain its previous monopoly.

27.     Rather than competing by producing, designing, and selling a better product, defendant has instead attempted to monopolize the market by improper and unlawful means.  For example, by threatening this sham litigation, by filing sham litigation in New Jersey, and by inducing Vitaquest to threaten sham litigation, defendant threatens to improperly destroy the competition in the relevant markets from which customers and the public benefit through better pricing and better products.

28.     As a direct and proximate result of defendant's conduct as described herein, Dymatize has suffered or will suffer damages including, but not limited to, lost sales or sales opportunities for its products, and expenses related to asserting this litigation as well as defending against defendant's action in New Jersey, including, among other items, counsel fees and costs.

**First Amended Complaint**

**APP 85**

Page 7

**Appendix p. 26**

## COUNT THREE

### Conspiracy in Restraint of Trade 15 U.S.C. § 1

29.     Dymatize realleges and incorporates by reference the allegations in Paragraphs 1-28 above.

30.     As noted above, upon information and belief, defendant has conspired with Vitquest to regain a monopoly and/or restrain trade in the relevant market.

31.     This anticompetitive conduct has an adverse effect on competition because it limits access to the relevant market and therefore limits competition within the relevant market.

32.     No legitimate justification exists for this anticompetiive conduct.  To the extent that defendant is seeking to achieve a legitimate business purpose via its conduct, it has failed to utilize the least restrictive means.  As such, any claimed procompetitive benefit is outweighted by the anticompetitive harm.

33.     As a direct and proximate result of defendant's conduct as described herein, Dymatize has suffered or will suffer damages including, but not limited to, lost sales or sales opportunities for its products, and expenses related to asserting this litigation as well as defending suit against defendant's action in New Jersey, including, among other items, counsel fees and costs.

## COUNT FOUR

### Conspiracy to Monopolize Trade 15 U.S.C. § 2

34.     Dymatize realleges and incorporates by reference the allegations in Paragraphs 1-31 above.

35.     As noted above, upon information and belief, defendant has conspired with Vitquest to regain and maintain a monopoly in the relevant market.

APP 86

36.     This anticompetitive conduct has an adverse effect on competition because it limits access to the relevant market and therefore limits competition within the relevant market.

37.     As a direct and proximate result of defendant's conduct as described herein, Dymatize has suffered or will suffer damages including, but not limited to, lost sales or sales opportunities for its products, and expenses related to asserting this litigation as well as defending against defendant's action in New Jersey, including, among other items, counsel fees and costs.

**COUNT FIVE**

**Antitrust, 15 U.S.C. §§ 1, 2**

38.     Dymatize realleges and incorporates by reference the allegations in Paragraphs 1-37 above.

39.     As noted above, upon information and belief, defendant has worked in concert with other parties in an attempt to restrain trade.

40.     Upon information and belief, and based upon its own representations, defendant has enjoyed a monopoly with respect to a 12-hour release protein product in violation of section 2 of the Sherman Act, 15 U.S.C. § 2.  As noted above, defendant acknowledged that MHP was the only company providing a 12-hour sustained release protein product prior to December 2007.

41.     Upon information and belief, defendant has engaged in predatory and anticompetitive conduct with the specific intent to monopolize the relevant market and geographic market described herein.

42.     For the reasons discussed herein, there is a dangerous probability that unless corrected defendant's predatory and anticompetitive conduct will result in defendant's re-attaining monopoly power in the relevant market.  Specifically, as discussed, before Dymatize entered the relevant market, defendant has admitted to being the only supplement company

providing a 12-hour sustained release protein product.  Upon information and belief, defendant intends to regain and sustain its previous monopoly.

43.     Rather than competing by producing, designing, and selling a better product, defendant has instead monopolized the market by improper and unlawful means.  For example, by threatening this sham litigation, by filing sham litigation in New Jersey, and by inducing Vitaquest to threaten sham litigation, defendant threatens to continue to improperly destroy the competition in the relevant markets from which customers and the public benefit through better pricing and better products.

44.     As a direct and proximate result of defendant's conduct as described herein, Dymatize has suffered or will suffer damages including, but not limited to, lost sales or sales opportunities for its products, and expenses related to asserting this litigation as well as defending against defendant's action in New Jersey, including, among other items, counsel fees and costs.

## COUNT SIX

### State Statutory Anti-Trust Violation

45.     Dymatize realleges and incorporates by reference the allegations in Paragraphs 1-44 above.

46.     For the reasons discussed herein, upon information and belief, defendant is attempting to regain and retain its monopoly in the relevant market.

47.     Upon information and belief, defendant utilized improper means to form and retain an unlawful monopoly and/or restrain trade, including but not limited to sham litigation.

48.     Dymatize has been injured as a result of defendant's actions.  Further, Dymatize will continue to be injured unless defendant is enjoined from regaining its previous monopoly.

49.     Defendant's misconduct is a violation of the antitrust statutes of the several states of the United States of America.

## COUNT SEVEN

### Civil Conspiracy

50.     Dymatize realleges and incorporates by reference the allegations in Paragraphs 1-49 above.

51.     Upon information and belief, defendant and Vitaquest conspired by taking unlawful, overt acts, many of which are discussed herein, to improperly and unlawfully create or attempt to create a monopoly and/or restrict trade in the relevant market.  Defendant and Vitaquest, through a meeting of the minds, intended to cause harm upon Dymatize.

52.     Upon information and belief, defendant and Vitaquest employed the identical counsel to present conflicting assertions against in furtherance of the purpose of eliminating Dymatize from the relevant market.

53.     Upon information and belief, both defendant and Vitaquest would have benefited if Dymatize was forced from the relevant market.

54.     Dymatize has been injured as a proximate cause of said conspiracy.

## PRAYER FOR RELIEF

WHEREFORE, Dymatize respectfully requests that the Court:

    A.      Enter judgment according to the declaratory relief sought;

    B.      Enter judgment against defendant for all damages in an amount to be proven at

trial;

    C.      Award Dymatize its costs in this action;

    D.      Award Dymatize compensatory damages;

    E.      Award Dymatize treble damages;

    F.      Award Dymatize legal fees; and

    G.      Enter such other further relief to which Dymatize may be entitled as a matter of

law or equity, or which the Court determines to be just and proper.

**APP 90**

**First Amended Complaint**              **Page 12**

**Appendix p. 31**

## DEMAND FOR JURY TRIAL

Dymatize hereby demands a trial by jury of all issues so triable in this action.


Dated: October 23, 2009                    Respectfully submitted,

                                            CARSTENS & CAHOON, LLP



                                            s/ Casey L. Griffith
                                            David W. Carstens
                                            Texas Bar No. 03906900
                                            Casey L. Griffith
                                            Texas Bar No. 24036687
                                            Zachary W. Hilton
                                            Texas Bar No. 24036780
                                            Amanda K. Jenkins
                                            Texas Bar No. 24054550
                                            13760 Noel Road, Suite 900
                                            Dallas, Texas 75240
                                            Telephone:  (972) 367-2001
                                            Facsimile: (972) 367-2002
                                            **COUNSEL FOR PLAINTIFF DYMATIZE
                                            ENTERPRISES, INC.**

### CERTIFICATE OF SERVICE

I hereby certify that I have on October 23, 2009, electronically filed the foregoing with the Clerk of court using CM/ECF system which will send notification of such filing to the following person(s) via email:

**Attorneys for Defendant**

Prescott W. Smith                          Robert J. Schoenberg
Craig W. Weinlein                          Riker Danzig Scherer Hyland & Perretti, LLP
Carrington, Coleman, Sloman &              Headquarters Plaza
    Blumenthal, LLP                        One Speedwell Avenue
901 Main Street, Ste. 5500                 Morristown, New Jersey 07962-1981
Dallas, Texas 75202


                                            s/ Casey L. Griffith
                                            Casey L. Griffith


**First Amended Complaint**          **APP 91**          Page 13

                                            **Appendix p. 32**