# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **EVOL, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Civil Action No. 3:09-CV-1839-O** |
| | § | |
| **SUPPLEMENT SERVICES, LLC,** | § | |
| **d/b/a MUSCLEMEDS** | § | |
| | § | |
| **Defendant.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the District Court's *Order of Reference*, filed January 6, 2010, before the Court is *Defendant's Motion to Transfer the Action*, filed October 29, 2009. (doc. 6). Based on the relevant filings, evidence, and applicable law, Defendant's motion should be **DENIED**.

## I. BACKGROUND

Plaintiff EVOL, Inc., is a Texas corporation with its principal place of business in Texas. Defendant Supplement Services, LLC d/b/a MuscleMeds, is a New Jersey limited liability company, with its principal place of business in New Jersey. EVOL and Musclemeds are both in the business of marketing and distributing food and sports nutritional supplements. EVOL alleges that MuscleMeds' products, Arimatest and MethylBURN Extreme, compete directly with its products, and that MuscleMeds' advertising materials contain false, misleading, and deceptive statements about these products. EVOL claims that MuscleMeds is liable for unfair competition and false advertising under the common law and the Lanham Act, 15 U.S.C. § 1051 *et seq.*

On October 29, 2009, MuscleMeds filed a motion to transfer venue from the Northern District of Texas to the District of New Jersey. The parties timely filed a response ("Resp.") and



EXHIBIT
E

reply ("Reply"), and the motion is now ripe for consideration.

## II. MOTION TO TRANSFER

Pursuant to 28 U.S.C. § 1404(a), MuscleMeds moves to transfer this lawsuit to the District of New Jersey. (Mot. at 2).

A district court may transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice ... to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). As a threshold matter, the language of § 1404(a) requires the court to determine whether the proposed transferee district is one in which the suit might have been brought. *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003). Once this threshold has been met, the court must then consider a number of private and public interest factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (hereinafter *In re Volkswagen II*). The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) [hereinafter *In re Volkswagen I*] (citing *Piper Aircraft Co. v. Hartzell Propeller, Inc.*, 454 U.S. 235, 241 n.6). The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* A court may not transfer a case where the result is merely to shift inconvenience of the venue from one party to the other.

*Fowler v. Broussard*, 2001 WL 184237, at *2 (N.D. Tex. Jan. 22, 2001) (Fitzwater, J.). "The moving parties bear the burden of proving by a preponderance of the evidence that transfer is appropriate." *Bank One, N.A. v. Euro-Alamo Invs., Inc.*, 211 F.Supp.2d 808, 812 (N.D. Tex. 2002) (Fitzwater, J.).

**A.      Proposed Transferee District**

As a threshold matter, the Court must determine whether the proposed transferee district is one in which the suit might have been brought. *In re Horseshoe Entm't*, 337 F.3d at 433. Since this action is founded on federal question jurisdiction, venue is proper only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

Here, it is undisputed that this suit might have been brought in the District of New Jersey. First, the only defendant in this action resides in the District of new Jersey; Musclemeds is a New Jersey limited liability company with its principal place of business in New Jersey. *See* 28 U.S.C. § 1391(c) (a corporate defendant resides in any district where it is subject to personal jurisdiction). Second, a substantial part of the events giving rise to EVOL's claims of unfair competition and false advertisement allegedly occurred in the New Jersey offices of MuscleMeds.

**B.      Private Interest Factors**

Since the suit might have been brought in the District of New Jersey, the Court next considers the private interest factors set out in *Volkswagen* to determine whether they favor transfer.

*1. Relative Ease of Access to Sources of Proof*

- 3 -

As for the relative ease of access to sources of proof, MuscleMeds contends that all documents relating to the design, selection, research and implementation of the allegedly false advertising statements regarding Arimatest and MethylBURN Extreme are located in New Jersey. (Mot. at 6). EVOL responds that MuscleMeds has not specified the existence, number, and volume of documents. (Resp. at 7).

By not specifying the number and volume of documents, MuscleMeds has failed to show that the amount of documents and their location would impose a hardship upon the parties. Given this failure, the first factor is neutral. *See NDC Invest. LLC v. Lehman Bros., Inc.*, 2006 WL 2051030, at *4 (N.D. Tex. July 21, 2006) (Fitzwater J.) (holding the factor neutral because movants did not demonstrate the number and volume of documents and records).

### 2. *Availability of Compulsory Process*

The second factor is the availability of compulsory process to compel the presence of unwilling witnesses. MuscleMeds asserts that the Northern District of Texas lacks absolute subpoena power over non-party witnesses such as independent consultants located in New Jersey, since these witnesses are outside the Northern District's subpoena power for depositions under Fed. R. Civ. P. 45(c)(3)(A)(ii), and since any trial subpoenas for these witnesses to travel more than a 100 miles would be subject to motions to quash under Fed. R. Civ. P. 45(c)(3)(A)(ii). (Mot. at 6). EVOL responds that MuscleMeds has failed to specify key witnesses to be called, make a general statement of what their testimony will cover, and identify any unwilling witnesses whose testimony would need to be compelled. (Resp. at 8-9).

Since MuscleMeds does not identify any unwilling witnesses whose testimony may need to be compelled, this factor is neutral. *See Pinnacle Label, Inc. v. Spinnaker Coating, LLC*, 2009 WL

- 4 -

3805798, at *10 (N.D. Tex. Nov. 12, 2009) (Fitzwater C.J.) (concluding this factor is neutral where no unwilling witnesses are identified); *Ternium Int'l U.S.A. Corp. v. Consol. Sys., Inc.*, 2009 WL 464953, at *3 (N.D. Tex. Mar. 25, 2009) (Fish, J.) (same).

MuscleMeds counters that it is not required to identify key witnesses under *In re Volkswagen II* and *Odom v. Microsoft Corp.*, 596 F.Supp.2d 995, 1001-02 (E.D. Tex. 2009). (Reply at 6-7). These cases state that movants are not required to provide affidavits identifying each proposed witness and outlining their testimony. They don not stand for the proposition that movants need not identify key witnesses at all.

### 3.  *Cost of Attendance for Willing Witnesses*

The third factor is the cost of attendance for willing witnesses. MuscleMeds states that since all the events giving rise to EVOL's claims occurred in New Jersey, almost all of its key witnesses, such as quality assurance, distribution, purchasing, packaging, research and development, and marketing personnel, would be from New Jersey. MuscleMeds suggests that because of the 1500-mile distance between New Jersey and Texas, it would be less costly to hold trial in New Jersey. (Mot. at 6-7). EVOL counters that MuscleMeds does not specify the key witnesses to be called or make a general statement of what their testimony will cover. (Resp. at 7).

Even though MuscleMeds has established at a general level that its witnesses will likely be from New Jersey, again it has not identified any key witnesses. As a result, the cost of attendance factor is neutral. *See Kimberly-Clark Worldwide, Inc. v. First Quality*, 2009 WL 2634860, at *6 (N.D. Tex 2009) (Fitzwater J.) (concluding that the factor is neutral where parties seeking transfer establish at a general level that witnesses will likely be derived from the transferee district but fail to identify any key witnesses).

- 5 -

**APP 96**

### 4. Practical Problems that Make the Trial of a Case Easy, Expeditious, and Inexpensive

MuscleMeds does not address and the Court does not find any other practical considerations related to the transfer.  This factor is neutral.

## C.   Public Interest Factors

The Court also considers the public interest factors to see if they favor transfer.

### 1. Administrative Difficulties flowing from Court Congestion

In deciding a motion to transfer, a court  must evaluate "the administrative difficulties flowing from court congestion." *In re Volkswagen II*, 545 F.3d at 315.  MuscleMeds does not argue that this factor favors transfer.  EVOL, on the other hand, cites statistics from the United States Courts' website to show that this case could proceed to trial more quickly in the Northern District of Texas than in the District of New Jersey.  (Resp. at 9).

Even though EVOL states that the median time to trial in the Northern district is 24.0 months for a jury trial as compared to 39.5 months in the district of New Jersey, it does not point to median times for cases adjudicated under the Lanham Act.  *See Odom v. Microsoft Corp.*, 596 F.Supp.2d 995, 1003 (E.D. Tex. 2009) (this factor is neutral where non-movant points to median times to trial generally but does not point to median times for patent cases).

### 2. Local Interest in Having Localized Interests Decided At Home

The second factor is the local interest in having localized interests decided at home. MuscleMeds argues that New Jersey has a strong interest in deciding this case since all the business activities that gave rise to EVOL's claims occurred in the New Jersey offices of  MuscleMeds. (Mot. at 7-8).  EVOL, on the other hand, asserts that Texas has an interest in this case because the alleged wrong-doer is from New Jersey and the allegedly false advertisements entered Texas.  (Resp.

- 6 -

at 11).

There is no doubt that residents of the Northern District of Texas have an interest in this dispute because the allegedly false advertisements entered Texas. *See Your Town Yellow Pages, L.L.C. V. Liberty Press*, 2009 WL 364509, at *14 (N.D. Tex., Nov. 2, 2009) (Fitzwater J.). The District of New Jersey has an interest in the dispute, but only because the outcome may have a direct financial impact on one of the parties. *See id.* Since the public at large is only affected in the Northern District of Texas, it has a direct interest in the dispute and is the more appropriate venue for resolving it. *See id.* This factor weighs against transfer.

### 3. *Familiarity of the Forum with the Law That Will Govern the Case*

The parties do not address whether this factor weighs in favor of or against transfer. This case asserts claims for unfair competition and false advertising under the Lanham Act and common law. Since this case involves federal law, both the Northern District of Texas and the District of New Jersey are equally capable of applying it. Where, as here, "the pre-dominant issues in the case involve federal law, or when the foreign law to be applied is not particularly complicated," this factor is neutral. *See Odom*, 596 F.Supp.2d at 1004.

### 4. *Avoidance of Unnecessary Problems of Conflict of Law*

The parties do not argue and there do not appear to be any conflict of law issues in this case. This factor is therefore neutral.

### D.   Balancing the Factors

Having considered all relevant factors, the Court finds that one factor weighs against granting the motion to transfer while seven are neutral in the analysis. On balance, the dispute between the parties would not proceed more conveniently and the interests of justice would not be

- 7 -

APP 98

better served by transferring the case to the District of New Jersey.  In sum, MuscleMeds has not

met its burden  to show by a preponderance of evidence that the transfer is appropriate, and the

motion to transfer should be **DENIED**.

### IV.  CONCLUSION

Defendant's motion to transfer should be **DENIED**.

**SO RECOMMENDED** on this 28th day of February, 2010.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

APP 99

Westlaw.

Slip Copy, 2009 WL 1024635 (W.D.Tex.)
**(Cite as: 2009 WL 1024635 (W.D.Tex.))**

**C**

Only the Westlaw citation is currently available.

United States District Court,
W.D. Texas,
El Paso Division.
Mildred J. CHAPMAN, et al., Plaintiffs,
v.
DELL, INC., Defendant.
**No. EP-09-CV-7-KC.**

April 15, 2009.

West KeySummary
**Federal Courts 170B ⟐106.5**

170B Federal Courts
    170BII Venue
        170BII(B) Change of Venue
            170BII(B)1 In General; Venue Laid in Proper Forum
                170Bk106 Determination in Particular Transferable Actions
                    170Bk106.5 k. In General. Most Cited Cases

Employer showed good cause for transfer of employees' discrimination claims against employer from the El Paso Division to the Austin Division. Employees did not dispute that they and their managers worked at employer's headquarters in the Austin Division. Employees merely stated that it was equally convenient to travel to Austin or El Paso. Furthermore, a forum selection clause provided for venue in the Austin Division. 28 U.S.C.A. § 1404(a).

David W. Sanford, Steven L. Wittels, Sanford Wittels & Heisler, LLP, New York, NY, Thomas Marc Litton, Sanford Wittels & Heisler, LLP, San Francisco, CA, Christa J. Boyd-Nafstad, James Alton Jones, Gillespie, Rozen, Watsky & Jones, P.C., Dallas, TX, for Plaintiffs.

Anne E. Martinez, Michael S. Burkhardt, Morgan, Lewis & Bockius LLP, Philadelphia, PA, Brittan L.

Buchanan, Van Osselaer & Buchanan, LLP, Jason Scott Boulette, Boulette & Golden L.L.P., Geoffrey D. Weisbart, Terry Lane Scarborough, Tonia Lea Lucio, Hance Scarborough LLP, Austin, TX, Rebecca Dianne Eisen, Morgan Lewis & Bockius, LLP, San Francisco, CA, for Defendants.

***ORDER***

KATHLEEN CARDONE, District Judge.

**\*1** On this day, the Court considered Defendant Dell, Inc.'s "Opposed Motion to Transfer Case to the Austin Division of the United States District Court for the Western District of Texas" ("Motion") (Doc. No. 55). For the reasons set forth herein, the Motion is **GRANTED** in part and **DENIED** in part.

**I. BACKGROUND**

On October 29, 2008, Plaintiffs filed a class-action complaint in the United States District Court for the Northern District of California on behalf of themselves and a class of current and former female employees of Defendant Dell, Inc. ("Defendant") and a class of current and former employees of Defendant over the age of forty. Original Case File ("File") (Doc. No. 49) at 10-11. The Complaint alleged gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), denial of equal pay for equal work based on sex and retaliation in violation of the Fair Labor Standards Act of 1938, as amended by the Equal Pay Act of 1963, 29 U.S.C. §§ 206, *et seq.,* age discrimination in violation of the Age Discrimination in Employment Act, 20 U.S.C. §§ 621, *et seq.,* and fraudulent inducement. *Id.* at 55, 57, 59-62. Later that day, another class-action complaint against Defendant, alleging violations of Title VII, was filed in the United States District Court for the Western District of Texas,

**APP 100**



© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1024635 (W.D.Tex.)
**(Cite as: 2009 WL 1024635 (W.D.Tex.))**

Austin Division; the latter case is currently assigned to Judge James R. Nowlin. *See* Compl. (Doc. No. 1) at 2, *Hubley v. Dell, Inc.,* No. 1:08-cv-804-JRN (W.D.Tex., Oct. 29, 2008) (hereinafter "Hubley case").

On November 14, 2008, Defendant filed a Motion to Transfer venue to the Western District of Texas. File at 142, 148. Plaintiffs and Defendant subsequently stipulated to such transfer, *id.* at 367, and the case was transferred to this Court on January 7, 2009. *See id.* at 1. On January 29, 2009, Defendant filed its Motion, requesting "an Order transferring this action to the Austin Division of the United States Court for the Western District of Texas with a recommendation that the Clerk's Office reassign the case [to Judge Nowlin]." Mot. 1. On February 23, 2009, Plaintiffs filed their "Memorandum of Law in Opposition to Defendant's Motion to Transfer Venue to the Austin Division" ("Response") (Doc. No. 58); and on March 3, 2009, Defendant filed its "Reply in Further Support of Opposed Motion to Transfer Case to the Austin Division of the United States District Court for the Western District of Texas" ("Reply") (Doc. No. 62).

## II. DISCUSSION

Defendant moves for transfer pursuant to both the mandatory-transfer provision of 28 U.S.C. § 1406(a) and the discretionary-transfer provision of 28 U.S.C. § 1404(a). The Court will analyze each in turn.

## A. Transfer Pursuant to 28 U.S.C. § 1406(a)

Defendant first argues that the Court must transfer this case from the El Paso Division of the Western District of Texas to the Austin Division. Mot. 3-5. Under § 1406(a), "[t]he district court of a district in which is filed a case laying venue *in the wrong division or district* shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a) (emphasis added). Accordingly, §

1406(a) applies if the El Paso Division is the wrong division for this case.

### a. Title VII

*2 Defendant argues that venue in the El Paso Division is improper under Title VII.[FN1] Title VII's venue provision states:

> FN1. Defendant does not challenge statutory venue pursuant to Plaintiffs' other causes of action.

[An action under Title VII may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice[.]
42 U.S.C. § 2000e-5(f)(3).

The El Paso Division is not the wrong venue under Title VII. Defendant argues-and Plaintiffs do not dispute-that the facts pertinent to this case occurred in and the relevant employment records are maintained in Defendant's headquarters in Round Rock, Texas, which is in the Austin Division of the Western District of Texas. Mot. 3; *see also* "Declaration of Richard Bye in Support of Opposed Motion to Transfer Case to the Austin Division of the United States District Court for the Western District of Texas" ("Bye Declaration") (Doc. No. 55-3) at 2; "Declaration of Craig Briscoe in Support of Opposed Motion to Transfer Case to the Austin Division of the United States District Court for the Western District of Texas" ("Briscoe Declaration") (Doc. No. 55-4) at 1-2. Under the plain language of Title VII, then, venue is proper in any district in Texas. *See* 42 U.S.C. § 2000e-5(f)(3) (referring, in the disjunctive, to any district in state); *see also Adams v. Cal-Ark Int'l, Inc.,* 159 F.Supp. 402, 409 (E.D.Tex.2001) ("venue is appropriate in any dis-

**APP 101**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1024635 (W.D.Tex.)
**(Cite as: 2009 WL 1024635 (W.D.Tex.))**

trict in the state in which the unlawful employment practices occurred"). If venue is proper in any district in Texas, it is a fortiori proper in any division of the Western District of Texas. *See Says v. M/V David C. Devall,* 161 F.Supp.2d 752, 753 (S.D.Tex.2001) (when venue statute refers to districts rather than divisions, venue is proper in all divisions of proper district). Accordingly, venue is proper in the El Paso Division.

**b. Forum-Selection Clause**

Defendant next argues that mandatory forum-selection clauses in Plaintiffs' signed Employment Agreements, which provide that "all disputes will be resolved in Travis County, Texas,"[FN2] make the El Paso Division the wrong venue for this case. Mot. 4; *see also id.* Ex. A at 3; *id.* Ex. B. at 3; *id.* Ex. C. at 3; *id.* Ex. D at 3.

> FN2. Travis County, Texas is located in the Austin Division.

Before deciding the effect of the forum-selection clauses on venue in the El Paso Division, the Court must first decide whether the clauses are enforceable. A forum-selection clause is presumptively enforceable unless a party clearly shows that the clause is "unreasonable under the circumstances." *Haynsworth v. The Corp.,* 121 F.3d 956, 962-63 (5th Cir.1997) (quoting *M/S Bremen et al. v. Zapata Off-Shore Co.,* 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)). A forum-selection clause may be unreasonable where:

(1) [T]he incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2)[T]he party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) [T]he fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4)[E]nforcement of the forum selection clause would contravene a strong public policy of the forum [ ].

**\*3** *Id.* at 963 (citing *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 595, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991)). Further, the "[f]raud and overreaching must be specific to a forum selection clause in order to invalidate it." *Id.* (citing *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)).

The forum-selection clauses in Plaintiffs' Employment Agreements are enforceable. The applicable law in the Austin and El Paso Divisions is identical, and enforcement of the clauses would not contravene any public policy of the El Paso Division. The named Plaintiffs do not currently live in either the Austin or El Paso Divisions, *see* Resp. Exs. E-J, and do not suggest that they will be deprived of their day in court if the case is transferred to the Austin Division. Finally, Plaintiffs provide no evidence that the forum-selection clauses were the product of fraud or coercion; they only state that the Agreements were non-negotiable. Resp. 3. This fact alone is not enough, as the presumption that a forum-selection clause is reasonable "applies to form contracts containing a choice of forum provision." *Kevlin Servs., Inc. v. Lexington State Bank,* 46 F.3d 13, 15 (5th Cir.1999) (citing *Carnival Cruise Lines,* 499 U.S. at 592-93). Moreover, Plaintiffs make no arguments "specific to [the] forum selection clause[.]" *Haynsworth,* 121 F.3d 963. Because Plaintiffs have not shown that their Agreements' forum-selection clauses are unreasonable, those clauses are enforceable.

Plaintiffs' argument that forum selection clauses are categorically unenforceable in Title VII cases is unavailing. *See* Resp. 10-11. The Fifth Circuit has made clear that "[a] forum selection provision in a written contract is *prima facie* valid and enforceable," *Kevlin Servs.,* 46 F.3d at 15, has set forth the factors that courts are to consider in determining their enforceability, *see Haynsworth,* 121 F.3d at 963, and has not excepted Title VII suits from that analysis. To hold that forum-selection clauses are automatically unenforceable in all Title VII cases

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1024635 (W.D.Tex.)
**(Cite as: 2009 WL 1024635 (W.D.Tex.))**

would both contradict the presumption of enforce-ability and preclude any fact-specific analysis. *See Haynsworth,* 121 F.3d at 962 ("this court and others have not hesitated to apply [ ] federal enforceability standards in [federal question] cases") (footnote omitted). Because a bright-line rule declining to enforce a broad category of forum-selection clauses is at odds with Fifth Circuit precedent, this Court de-clines to adopt one here.[FN3]

> FN3. For this reason, this Court declines to follow two district court cases cited by Plaintiffs which announced a bright-line rule that forum-selection clauses are inval-idated by Title VII's venue provision in all cases. *See Thomas v. Rehab. Servs. of Columbus, Inc.,* 45 F.Supp.2d 1375, 1381 (M.D.Ga.1999); *Smith v. Kyphon, Inc.,* 578 F.Supp.2d 954, 961 (M.D.Tenn.2008). Those cases have never been "expressly followed in [their] holding by any other district court." *Kyphon,* 578 F.Supp. at 961. Further, the bright-line rule an-nounced in those cases was not necessary to their result, as both courts held that transfer was unwarranted even if the for-um-selection clause was enforceable. *See Thomas,* 45 F.Supp.2d at 1379 ("it is en-tirely appropriate to exercise this Court's lawful discretion to deny [defendant's] mo-tion [to transfer]"); *Kyphon,* 578 F.Supp. at 961 ("whether the forum-selection provi-sion is enforceable or not, public-policy considerations permit this Court to exer-cise its discretion to deny the motion to transfer").

Although the forum-selection clauses in Plaintiffs' Agreements are enforceable, transfer under § 1406(a) is not appropriate unless the clauses render this Court "the wrong division or district" for this case. 28 U.S.C. § 1406(a). "There is disagreement among the courts of appeal ... over whether a valid forum selection clause that mandates venue in an-other federal [division] can render venue improper

in the original [division] even when the case other-wise could have been brought in that [division] un-der the applicable venue statutes." 14D CHARLES ALAN WRIGHT, ARTHUR R. MILLER & ED-WARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3803.1 (2d ed.1995); *compare Kerobo v. Sw. Clean Fuels. Corp.,* 285 F.3d 531, 546 (6th Cir.2002) ("forum selection clauses do not dictate the forum"), *with Salton, Inc. v. Philips Do-mestic & Pers Care B.V.,* 391 F.3d 871, 881 (7th Cir.2004) ("a forum-selection clause is a substitute for the legal rules governing venue"). The Fifth Circuit has not decided this issue. *See Youngblood v. JTH Tax Servs., Inc.,* No. SA: 06-CA-380-XR, 2006 U.S. Dist. LEXIS 49478, at *7, 2006 WL 1984656 (W.D.Tex., July 17, 2006); *Se. Consulting Group, Inc. v. Maximus, Inc.,* 387 F.Supp.2d 681, 683 (S.D.Miss.2005). However, several district courts in the Fifth Circuit have enforced a forum-selection clause designating a specific federal for-um by transferring to that federal forum pursuant to the discretionary-transfer provision of 28 U.S.C. § 1404(a) rather than holding that venue is improper in the transferor court and transferring under § 1406(a). *See, e.g., Youngblood,* 2006 U.S. Dist. LEXIS 49478, at *8, 2006 WL 1984656; *Dorsey v. N. Life Ins. Co.,* No. Civ. A. 04-0342, 2004 U.S. Dist. LEXIS 22443, at *38-39 (E.D.La. Nov. 4, 2004); *Speed v. Omega Protein, Inc.,* 246 F.Supp.2d 668, 671 (S.D.Tex.2003). This Court elects to do the same. Defendant has alternatively moved for transfer under § 1404(a) and the Court ultimately concludes that such transfer should be granted. For this reason, the Court need not decide the unresolved question of whether the parties' for-um-selection clause renders venue improper in the El Paso Division and whether § 1406(a) therefore applies.

**B. Transfer Pursuant to 28 U.S.C. § 1404(a)**

*\*4* Section 1404(a) provides that, "[f]or the con-venience of parties and witnesses, [and] in the in-terest of justice, a district court may transfer any civil action to any other district or division where it

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1024635 (W.D.Tex.)
**(Cite as: 2009 WL 1024635 (W.D.Tex.))**

might have been brought." [FN4] The decision to effect transfer under § 1404(a) is committed to the discretion of the district court. *Jarvis Christian Coll. v. Exxon Corp.,* 845 F.2d 523, 528 (5th Cir.1988). In addition to the factors set forth in the statutory text, the Fifth Circuit has instructed courts to also consider a non-exhaustive and non-exclusive list of public and private interest factors:

> FN4. As explained in the Section of this Order discussing Title VII's venue provision, this case might have been brought in the Austin Division.

The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*In re Volkswagen of Am.. Inc..* 545 F.3d 304, 314 (5th Cir.2008) (quotations omitted).

Plaintiffs argue that the Court should deny transfer because they prefer to litigate in the El Paso Division. Resp. 7. In considering discretionary transfer, "courts should normally defer to [a] plaintiff's choice of forum." *Martinez v. City of Fort Worth,* No. 3:02-CV-2286-M, 2003 U.S. Dist. LEXIS 8949, at *2, 2003 WL 21289654 (N.D.Tex. May 28, 2003) (citing *Peteet v. Dow Chem. Co.,* 868 F.2d 1428, 1436 (5th Cir.1989)). Nevertheless, if a party "demonstrates that the transferee venue is clearly more convenient, it has shown good cause [to override a plaintiff's choice] and the district court should therefore grant the transfer." *Volkswagen.* 545 F.3d at 315.

In determining whether Defendant has shown good cause, the Court notes that the normal deference Plaintiffs' choice of forum would receive is tempered in this case for several reasons. First, Plaintiffs do not live in the El Paso Division. *See Jam Strait, Inc. v. Am. Prods. Co., Inc.,* No. 02-2055, 2002 U.S. Dist. LEXIS 18956, at *5. 2002 WL 31246566 (E.D.La. Oct. 4, 2002) (when "plaintiff has not brought suit on its 'home turf' ... the quantum of inconvenience to defendant needed to tip the balance in favor of transfer is concomitantly reduced") (quotation omitted). Second, deference is "lessened [because] the operative facts of the dispute occur[ed] outside the plaintiff's chosen forum." *Icon Indus. Controls Corp. v. Cimetrix, Inc.,* 921 F.Supp. 375, 383 (W.D.La.1996). Here, Plaintiffs do not dispute Defendant's contention that they and their managers worked at Defendant's headquarters in the Austin Division. Mot. 8. In fact, when the basis for a plaintiff's claim arises in a defendant's "principal place of business, [that factor] is often the critical and controlling consideration in adjudicating transfer of venue motions." *Spiegelberg v. Collegiate Licensing Co.,* 402 F.Supp.2d 786, 792 (S.D.Tex.2005) (quotation omitted). Given Plaintiffs' lack of personal connection to the El Paso Division and the absence of a factual connection to the El Paso Division, the "plaintiff's choice of forum carries very little significance if other facts weigh in favor of transfer." *Empty Barge Lines II, Inc. v. Higman Barge Lines. Inc.,* 441 F.Supp.2d 786, 798 (E.D.Tex.2006) (quotation omitted). Finally, as discussed *infra,* Plaintiffs arguments are contradicted by valid forum-selection clauses providing for venue in the Austin Division.

**\*5** Weighed against this reduced level of deference, Defendant has shown good cause for transfer. Defendant has first shown that the Austin Division is a more convenient forum for the parties. The Austin Division is clearly more convenient for Defendant, as it is the site of Defendant's headquarters; on the other hand, Plaintiffs merely state that "it is [ ] equally convenient" to travel to Austin or El Paso." Resp. Ex. E at 3; *id.* Ex. F at 2; *id.* Ex. G. at 2; *id.*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1024635 (W.D.Tex.)
**(Cite as: 2009 WL 1024635 (W.D.Tex.))**

Ex. H at 2; *id.* Ex. I at 2.[FN5] Because the Austin Division is equally convenient for nearly all Plaintiffs but more convenient for Defendant, it is on balance a more convenient forum for the parties.

> FN5. A single Plaintiff states that it is more convenient for her to make a "six and a half hour drive from Surprise, AZ to El Paso" than a "fifteen hour[ ] drive to Austin." *Id.* Ex. J at 2. The Court notes that two other Plaintiffs facing the opposite situation-a longer drive to El Paso than to Austin-believe it is "equally convenient" to drive to Austin or fly to El Paso. *Id.* Ex. F at 2; *id.* Ex. G at 2. Nevertheless, a single Plaintiff's estimated driving time does not tip the balance of § 1404(a) factors in Plaintiffs' favor.

"The relative convenience to the witnesses is often recognized as the most important factor to be considered in a motion under § 1404(a)." *State St. Capital Corp. v. Dente,* 855 F.Supp. 192, 197 (S.D.Tex.1994) (citations omitted). Defendant does not provide any specific witnesses who reside in the Austin Division and Plaintiffs do not provide any witnesses who reside in the El Paso Division. Because Plaintiffs' choice of forum is entitled to at least some deference, the Court will assume the unlikely proposition that *none* of the potential witnesses are currently residing near Defendant's headquarters. If that is the case, this factor favor neither party. *See Shaw Group v. Versus Natkin & Co.,* 907 F.Supp. 201, 205 (M.D.La.1995) ("The convenience of the witnesses favors neither [forum], as witnesses are scattered across the country.").[FN6] Similarly, neither party has shown that either potential forum would provide easier access to sources of proof. Because Plaintiffs prefer to litigate in the El Paso Division, however, and because "access to sources of proof presents a lesser inconvenience now that it might have absent recent developments," *Volkswagen,* 545 F.3d at 317, the Court will again assume that access to sources of proof favors neither party. Nevertheless, "[t]aking

into account all other practical problems that make trial of a case easy, expeditious and inexpensive," *id.* at 314, the forum where Defendant is headquartered and where the facts of this case took place is much more likely than the El Paso Division to eventually minimize the inconvenience to all involved. This factor favors Defendant. Because convenience to the parties and the practicalities of the case favor Defendant and no private interest factors favor Plaintiffs, the private interest factors favor Defendant.

> FN6. For the same reason, the relative availability of compulsory process to secure attendance of non-party witnesses and the cost of attendance for willing witnesses favors neither party.

The public interest factors also favor Defendant. The docket congestion of the Austin and El Paso Divisions does not strongly favor either party: The El Paso Division has fewer civil filings but more criminal filing than the Austin Division. *See generally* Resp. Ex. M (filing statistics for Western District of Texas in 2007). The local interest in having localized controversies decided at home strongly favors the Austin Division because Defendant is headquartered in the Austin Division and none of the parties or facts have any connection to the El Paso Division. Finally, in a transfer between divisions within the same federal district, familiarity with applicable law and possible conflicts of law are non-factors. As the only public interest factor favoring either party-local interest-favors Defendant, the public interest factors on balance favor Defendant.

**\*6** Under § 1404(a), a transfer must also be "in the interest of justice." "[I]t is well established that the interest of justice is a factor ... to be considered on its own and is an extremely important one." 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3854 (2d ed.1995); *see, e.g., Beck v. Koppers, Inc.,* No. 3:04CV160-P-D, 2009 U.S. Dist. LEXIS 11632, at

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1024635 (W.D.Tex.)
**(Cite as: 2009 WL 1024635 (W.D.Tex.))**

*8, 2009 WL 230036 (N.D.Miss. Jan. 29, 2009) (interest of justice not served when "case would be separated into twelve separate trials" by transfer); *FDIC v. White,* No. 3:96-CV-0560-P, 1998 U.S. Dist. LEXIS 3020, at *15, 1998 WL 120299 (N.D.Tex. Mar. 5, 1998) (interest of justice not served by transfer when "the court-and the parties-have expended considerable time and resources on the case"). The only issue Plaintiffs have identified which would separately affect the interests of justice is the existence of the Hubley case pending in the Austin Division.

Plaintiffs seek to consolidate the Hubley case and this case in the El Paso Division. *See* Resp. 9. Defendant seeks to transfer this case to the Judge presiding over the Hubley case. *See* Mot. 1. Finally, the Hubley plaintiffs, proceeding as amici before this Court, unequivocally state that they oppose consolidation. *See* Opp'n to Mot. to Stay or Transfer (Doc. No. 64) at 10 ("The Hubley Plaintiffs ... oppose consolidation"). Whether the interests of justice are served by consolidating this case with the Hubley case is a separate inquiry from whether the interests of justice are served by proceeding with this case in the El Paso Division. As to the latter, they are not. If this case should be consolidated, it should be consolidated in the Austin Division; if it should not, it should be separately heard in the Austin Division. Accordingly, this Court will grant neither Plaintiffs' request to transfer the Hubley case to this Court nor Defendant's request to transfer this case to Judge Nowlin. How the case should proceed in the Austin Division is best left to be resolved in the Austin Division.[FN7]

> FN7. That this case was filed before the Hubley case does not affect this Court's decision. Under the "first-to-file" rule, when two related cases are pending in different federal courts, the later-filed case should defer to the earlier-filed case. *Cadle Co. v. Whataburger of Alice, Inc.,* 174 F.3d 599, 603 (5th Cir.1999). It is a threshold question whether the cases here are related such

that the rule applies; that question is again best left to the Austin Division. Assuming arguendo that the first-filed rule does apply, it only requires that "the court initially seized of a controversy [ ] be the one to decide whether it will try the case." *Mann Mfg., Inc. v. Hortex, Inc.,* 439 F.2d 403, 407 (5th Cir.1971). It does not require that this Court decide against transfer. *See, e.g., W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24,* 751 F.2d 721, 729 n. 1 (Court with second-filed case may stay case "to permit the court of first filing to rule on a motion to transfer. If that court transfers the first-filed action, the stay could be lifted and the actions consolidated.").

Finally, the presence of an enforceable forum-selection clause providing for venue in the Austin Division tips the balance overwhelmingly in favor of transfer. As no other factors weigh in favor of this case remaining in the El Paso Division, "the forum selection clause, while not controlling, is the most dispositive factor in the Court's decision." *Arkel Int'l, L.L.C. v. Parsons Global Servs.,* No. 07-474-FJP-DLD, 2008 U.S. Dist. LEXIS 1624, at *21-22 (M.D.La. Jan. 8, 2008) (quoting *Berg v. Sage Envtl. Consulting of Austin, Inc.,* 381 F.Supp.2d 552, 557 (M.D.La.2005)); *see also Stone & Webster Constr., Inc. v. E-J Elec. Installation Co.,* No. H-06-2426, 2006 U.S. Dist. LEXIS 76897, at *5-6, 2006 WL 2880453 (S.D.Tex. Oct. 6, 2006) ("presence of a valid forum selection clause alters [the] presumption [of] defer[ence] to plaintiff's choice of forum") (citing *In re Ricoh Corp.,* 870 F.2d 570, 573 (11th Cir.1989); *ABC Rental Sys., Inc. v. Colortyme, Inc.,* 893 F.Supp. 636, 639 (E.D.Tex.1995)). Because an enforceable forum-selection clause mandates venue in the Austin Division and all other § 1404(a) factors are either neutral or weigh in favor of transfer to the Austin Division, this Court concludes that such transfer is an appropriate exercise of its discretion.

**III. CONCLUSION**

**APP 106**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1024635 (W.D.Tex.)
**(Cite as: 2009 WL 1024635 (W.D.Tex.))**

**\*7** For the reasons outline above, Defendant's "Opposed Motion to Transfer Case to the Austin Division of the United States District Court for the Western District of Texas" **(Doc. No. 55)** is hereby **GRANTED** in part and **DENIED** in part.

Accordingly, **IT IS HEREBY ORDERED** that the above-captioned cause be **TRANSFERRED** to the Austin Division of the United States District Court for the Western District of Texas. Pursuant to the most recent Order Assigning Business of the Court, the Clerk shall credit this case to the percentage of business of the receiving Judge.

**SO ORDERED.**

W.D.Tex.,2009.
Chapman v. Dell, Inc.
Slip Copy, 2009 WL 1024635 (W.D.Tex.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**APP 107**

Westlaw.

Not Reported in F.Supp.2d, 2008 WL 4180261 (N.D.Tex.)
(Cite as: 2008 WL 4180261 (N.D.Tex.))

**C**Only the Westlaw citation is currently available.

United States District Court,
N.D. Texas,
Dallas Division.
Teesa WALLACE, Plaintiff,
v.
CHILD CARE ASSOCIATES, Defendant.
**Civil Action No. 3:08-CV-1016-O.**

Sept. 8, 2008.

Mark McAdoo, Law Offices of Mark A. McAdoo, Arlington, TX, for Plaintiff.

Caroline C. Harrison, Bridget A. Blinn, David B. Dowell, Cantey & Hanger LLP, Fort Worth, TX, for Defendant.

**MEMORANDUM OPINION AND ORDER**

REED O'CONNOR, District Judge.

**\*1** Before the Court is Defendant Child Care Associates' Motion to Transfer Venue (Doc. # 4) filed August 22, 2008. Having reviewed the motion, Plaintiff's response, and the applicable law, the Court finds that Defendant's motion should be and is hereby **GRANTED.**

I. BACKGROUND

In this employment discrimination suit, Plaintiff contends Defendant forced her to resign in violation of Title VII. *See generally Plt's Cplt.* According to the complaint, Plaintiff is a resident of Tarrant County, Texas. *Id.* Defendant's principal place of business is in Tarrant County, Texas. *See Dft's Mtn to Transfer.*

Plaintiff initiated this action in the Dallas Division of the United States District Court for the Northern District of Texas on June 17, 2008. *See Doc. # 1.* On August 22, 2008, Defendant answered and moved to transfer venue of this case to the Fort Worth Division pursuant to 28 U.S.C. § 1404. *See Doc. # 4.* Plaintiff

responded to Defendant's Motion to Transfer Venue on September 3, 2008. *See Doc. # 8.* The issue is now ripe for decision.

II. ANALYSIS

A district court may transfer any civil case "[f]or the convenience of the parties and witnesses, in the interest of justice ... to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). When considering a motion to transfer venue, a district court must consider "a number of private and public interest factors, 'none of which can be said to be of dispositive weight.' " *In re Volkswagen of Am. Inc.,* 506 F.3d 376, 380 (5th Cir.2007), *reh'g granted,* 517 F.3d 785 (5th Cir. Feb.14, 2008);[FN1]*see also In re Horseshoe Entm't,* 337 F.3d 429, 434-35 (5th Cir.2003). The private factors include: (1) access to sources of proof; (2) the availability of the compulsory process power; (3) costs to witnesses of appearing; and (4) any other practical considerations affecting the ease and expense of trial. *In re Volkswagen of Am. Inc.,* 506 F.3d at 380. The public interest factors include: (1) judicial economy; (2) interests associated with having local interests decided locally; (3) forum familiarity with the law at issue; and (4) problems arising from conflict of law. *Id.* Based on Fifth Circuit precedent, the plaintiff's choice of forum is also a factor to be considered "but in and of itself is neither conclusive nor determinative." *In re Horseshoe Entm't,* 337 F.3d at 434.

> FN1. The Court recognizes that the panel opinion in *In re Volkswagen* is no longer precedent because the motion for rehearing en banc was granted. *Byrne v. Butler,* 845 F.2d 501, 507 (5th Cir.1988) ("as we have stressed, [t]he grant of a rehearing en banc vacates the panel opinion, which thereafter has no force"). However, given the primary issue before the court of appeals involves whether a writ of mandamus is a proper avenue to challenge a district court's order regarding venue, the Court does not anticipate a change to the analysis of the motion to transfer under the facts in this case.

When ruling on a motion to transfer venue, the first

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2008 WL 4180261 (N.D.Tex.)
**(Cite as: 2008 WL 4180261 (N.D.Tex.))**

issue that a district court must decide is whether the district or division to which transfer is sought is one where the civil action "might have been brought." 28 U.S.C. § 1404. As previously discussed, Plaintiff resides in Tarrant County, Texas and Defendant's principal place of business is in Tarrant County, Texas. Tarrant County, Texas is within the jurisdiction of the Fort Worth Division. *See* 28 U.S.C. § 124(a)(2). Under 28 U.S.C. § 1391(b), a federal question claim, like the one asserted by Plaintiff in this suit, may be brought in "(1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omission giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is not district in which the action may otherwise be brought." *Id.* Given that the only Defendant in this case has it's place of business in Tarrant County, Texas and that all of the events giving rise to this dispute occurred in Tarrant County, Texas, there is no question that the Fort Worth Division is a forum where this lawsuit could have been brought.

**\*2** Next, Defendant has the burden to demonstrate that the Fort Worth Division is clearly more convenient than the Dallas Division. This means that Defendant must show good cause by demonstrating that the transfer is "[f]or the convenience of the parties and witnesses, in the interest of justice." *In re Volkswagen of Am. Inc.,* 506 F.3d at 380. "When the transferee forum is no more convenient than the chosen forum, the plaintiff's choice should not be disturbed. When the transferee forum is clearly more convenient, a transfer should be ordered." *Id.*

Here, Defendant notes, and Plaintiff does not dispute, that all of the events giving rise to this lawsuit involve Plaintiff s employment within the Fort Worth Division. *See Dft's Mtn. To Transfer ¶ 4.* All of the witnesses and evidence are located in the Fort Worth Division. *Id.* Thus it will clearly be more convenient for the parties and the witnesses to appear and produce evidence if the case is transferred to the Fort Worth Division.

Defendant has also identified fact witnesses who almost certainly will be called to testify. *See Dft's Brief in Support, p. 2.* These witnesses reside within the

jurisdictional boundaries of the Fort Worth Division. *Id.* Plaintiff points to no witnesses who live or work in the Dallas Division. The convenience of witnesses may be considered "the most powerful factor governing the decision to transfer a case." *See Gundle Lining Const. Corp. v. Fireman's Fund Ins. Co.,* 844 F.Supp. 1163, 1166 (S.D.Tex.1994); *Dupre v. Spanier Marine Corp.,* 810 F.Supp. 823, 825 (S.D.Tex.1993). Because all of the identified fact witnesses also reside in the Fort Worth Division, this factor weighs strongly in favor of transferring this case.

While the Dallas Division is Plaintiff's choice, that choice is afforded less deference when the plaintiff does not reside in the chosen forum and when none of the operative facts have occurred in the chosen forum. *See In re Horseshoe Entm't.,* 337 F.3d 429, 434-35 (5th Cir.2003); *Time, Inc. v. Manning,* 366 F.2d 690, 698 (5th Cir.1966); *Apparel Production Services Inc. v. Transportes De Carga Fema, S.A. De C.V.; Rock Bit Int'l v. Smith Int'l, Inc.,* 957 F.Supp. 843, 844 (E.D.Tex.1997); *Reed v. Fina Oil and Chemical Co.,* 995 F.Supp. 705, 714 (E.D.Tex.1998). As Plaintiff resides in the Fort Worth Division and this lawsuit has no connection with the Dallas Division, Plaintiff's choice of the Dallas Division is given less weight.

Finally, this case is in the very early stages of litigation. This case is transferred less than thirty days from Defendant's answer. There is little chance that a transfer of venue will result in delay or prejudice to either side.

In reaching this decision, the Court has considered all of the public and private factors related to a decision to transfer venue. Because of the close proximity between the Dallas and Fort Worth federal courthouses, several of the relevant factors, such as the availability of compulsory process, conflicts of laws, and familiarity with the law, are neutral or are irrelevant. However, other factors, such as having local interests decided locally, access to sources of proof, and costs and convenience of witnesses, favor transfer of this case.

**\*3** Because all of the facts that form the basis of this suit occurred in the Fort Worth Division, both parties reside or have their principal place of business in the Fort Worth Division, all of the potential fact wit-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**APP 109**

Not Reported in F.Supp.2d, 2008 WL 4180261 (N.D.Tex.)
**(Cite as: 2008 WL 4180261 (N.D.Tex.))**

nesses identified by the parties reside in the Fort Worth Division, and the citizens within the Dallas Division have no interest in resolving this dispute, on balance the Court finds the litigation would more conveniently proceed and the interests of justice would be better served if this case is transferred to the Fort Worth Division.

### III. CONCLUSION

Defendant has met its burden to show that the Fort Worth Division of the Northern District of Texas is the more convenient forum for the parties and witnesses and in the interests of justice. It is therefore ORDERED that Defendant's Motion to Transfer Venue (Doc. # 4) is hereby GRANTED. It is FURTHER ORDERED that pursuant to 28 U.S.C. § 1404(a) this case is TRANSFERRED to the United States District Court for the Northern District of Texas, Fort Worth Division.

SO ORDERED.

N.D.Tex.,2008.
Wallace v. Child Care Associates
Not Reported in F.Supp.2d, 2008 WL 4180261 (N.D.Tex.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Slip Copy, 2009 WL 2634860 (N.D.Tex.)
**(Cite as: 2009 WL 2634860 (N.D.Tex.))**

HOnly the Westlaw citation is currently available.

United States District Court,
N.D. Texas,
Dallas Division.
KIMBERLY-CLARK WORLDWIDE, INC., Plain-
tiff-counterdefendant,
v.
FIRST QUALITY BABY PRODUCTS, LLC, et al.,
Defendants-counterplaintiffs.
**Civil Action No. 3:09-CV-0488-D.**

Aug. 26, 2009.

West KeySummary
**Federal Courts 170B ☞110**

170B Federal Courts
    170BII Venue
        170BII(B) Change of Venue
            170BII(B)1 In General; Venue Laid in
Proper Forum
                170Bk106 Determination in Particular
Transferable Actions
                    170Bk110 k. Patents, Copyrights and
Trade Regulation. Most Cited Cases
Private and public interest factors favored transfer-
ring a patent infringement action from Texas to
Pennsylvania. Much of the relevant evidence was
found in Pennsylvania where substantial aspects of
the allegedly infringing conduct took place. The local
interest in having the case tried in Pennsylvania also
favored transfer. 28 U.S.C.A. § 1404(a).

Kevin James Meek, Chad Terrell, Ryan Bangert,
Baker Botts, Dallas, TX, Janice V. Mitrius, Jeffrey
M. Cox, Katherine L. Fink, Marc S. Cooperman,
Banner & Witcoff Ltd., Chicago, IL, Vicki Margolis,
Kimberly-Clark Corporation, Neenah, WI, for Plain-
tiff-counterdefendant.

Linda R. Stahl, Andrews Kurth, Dallas, TX, Ira E.
Silfin, Kenneth P. George, Nathan Weber, Amster
Rothstein & Ebenstein LLP, New York, NY, for De-
fendants-counterplaintiffs.

*MEMORANDUM OPINION AND ORDER*

SIDNEY A. FITZWATER, Chief Judge.

**\*1** In this patent infringement action, defendants-
counterplaintiffs move on two grounds-the first-to-
file rule and 28 U.S.C. § 1404(a)-to transfer this case
to the Middle District of Pennsylvania. Concluding
that defendants-counterplaintiffs have clearly demon-
strated that this case should be transferred under §
1404(a), the court grants the motion.[FN1]

> FN1. First Quality Baby Products, LLC
> ("FQBP") also moves to dismiss under
> Fed.R.Civ.P. 12(b)(3) for improper venue.
> In their motion to transfer and supporting
> brief, defendants maintain that, for FQBP,
> the motion to transfer is in the alternative.
> Ds. Mot. 1 n. 1; Ds. Br. 1 n. 1. Because the
> court is granting the motion to transfer, it
> need not decide FQBP's motion to dismiss.

I

Plaintiff-counterdefendant Kimberly-Clark World-
wide Inc. ("KC") filed this patent infringement action
against defendants-counterplaintiffs First Quality
Baby Products, LLC ("FQBP"),[FN2] First Quality
Products, Inc. ("FQP"), and First Quality Retail Ser-
vices, LLC ("FQRS") (collectively "First Quality")
on March 12, 2009. K-C alleges in count I of its
complaint that First Quality's new diaper product
infringes U.S. Patent No. 5,496,298 ("the '298 Pat-
ent"). It asserts in count II that the new diaper prod-
uct infringes U.S. Patent No. 5,286,543 ("the '543
Patent"). And it avers in counts III, IV, and V that
First Quality is infringing three other patents by
manufacturing, using, selling, and importing various
products (including disposable adult underwear, male
guards, incontinence pads, and other diapers). These
patents are U.S. Patent No. 5,601,542 ("the '542 Pat-
ent"), U.S. Patent No. 5,147,343 ("the '343 Patent"),
and U.S. Patent No. 6,702,798 ("the '798 Patent").

> FN2. FQBP has not filed a counterclaim.

On February 25, 2009, two weeks before K-C initi-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2009 WL 2634860 (N.D.Tex.)
**(Cite as: 2009 WL 2634860 (N.D.Tex.))**

ated this lawsuit, FQBP filed suit in the Middle District of Pennsylvania seeking a declaratory judgment that its new diaper product does not infringe the '298 Patent and that the ' 298 Patent is invalid and unenforceable. Before filing suit, FQBP had manufactured tens of millions of the new diaper in Pennsylvania, offered the new diaper for sale, submitted the new diaper for use testing, and begun limited public distribution.

On March 13, 2009, one day after K-C filed this suit, First Quality filed an amended complaint in the Middle District of Pennsylvania suit matching the claims K-C asserts here. On the same day, K-C filed a motion to dismiss the Middle District of Pennsylvania action, alleging that there was no subject matter jurisdiction at the time FQBP filed suit. On June 15, 2009 the Middle District of Pennsylvania granted K-C's motion to dismiss for lack of subject matter jurisdiction. FQBP filed a notice of appeal on July 15, 2009.

First Quality moves to transfer this action to the Middle District of Pennsylvania, arguing that transfer is warranted under the first-to-file rule or, alternatively, pursuant to 28 U.S.C. § 1404(a).

II

The court will not decide First Quality's motion based on the first-to-file rule.

First, although the parties have analyzed the first-to-file rule under Fifth Circuit authority, Ds. Br. 7-9, P. Br. 5-9, it is unclear whether Fifth Circuit or Federal Circuit precedent controls. The Federal Circuit applies a "courtesy rule" under which it is "generally guided by the law of the regional 'circuit to which district court appeals normally lie, unless the issue pertains to or is unique to patent law[.]' " *Amana Refrigeration, Inc. v. Quadlux, Inc.,* 172 F.3d 852, 856 (Fed.Cir.1999) (citing *Molins PLC v. Quigg,* 837 F.2d 1064, 1066 (Fed.Cir.1988)). But the court has found no clear indication that the Federal Circuit would apply regional circuit law in analyzing a transfer under the first-to-file rule. And it has located at least one instance in which the Federal Circuit appears not to have applied regional circuit law. *See Elecs. for Imaging, Inc. v. Coyle,* 394 F.3d 1341, 1347-48 (Fed.Cir.2005).

*2 Second, assuming Fifth Circuit law applies, it is not entirely clear whether the dismissal of the suit in the Middle District of Pennsylvania affects the application of the first-to-file rule. On the one hand, the putative first-filed case is no longer pending in another district court, so there is no longer another district court to which this court should defer. On the other hand, the dismissal has been appealed. In *Burger v. American Maritime Officers Union,* 170 F.3d 184, 1999 WL 46962 (5th Cir. Jan.27, 1999) (per curiam) (unpublished table decision), the Fifth Circuit held in an unpublished opinion that

[a]lthough this circuit has thus far only applied the first-to-file rule when similar actions are pending in two federal district courts and where similar actions are pending in the same federal district, the same policy concerns for avoiding duplicative litigation and comity exist when a similar matter is pending in a federal district court and a federal court of appeals in a different circuit.

*Id.* at *1 (citing cases). In Burger the district court granted a dismissal based on the first-to-file rule despite the fact that the first-filed case had already been dismissed. *See id.* (the Florida district court dismissed some claims on July 31, 1996 and the remainder on April 24, 1997, and in late September and early October 1997 the Louisiana district court dismissed all claims based on first-to-file rule).

Given the absence of briefing of this issue under Federal Circuit law, and the lack of clarity under Fifth Circuit law concerning the impact of the dismissal of the suit in the Middle District of Pennsylvania, the court will decide First Quality's motion under § 1404(a) rather than under the first-to-file rule.

III

Section 1404(a) provides that, "[f] or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "The decision to transfer is made to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Bank One, N.A. v. Euro-Alamo Invs., Inc.,* 211 F.Supp.2d 808, 811 (N.D.Tex.2002) (Fitzwater, J.) (citing *Stabler v. N.Y. Times Co.,* 569 F.Supp. 1131, 1137 (S.D.Tex.1983)).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2634860 (N.D.Tex.)
**(Cite as: 2009 WL 2634860 (N.D.Tex.))**

The court cannot transfer a case where the result is merely to shift the inconvenience of the venue from one party to the other. *Fowler v. Broussard,* 2001 WL 184237, at *6 (N.D.Tex. Jan.22, 2001) (Fitzwater, J.) (citing *Enserch Int'l Exploration, Inc. v. Attock Oil Co.,* 656 F.Supp. 1162, 1167 n. 15 (N.D.Tex.1987) (Fitzwater, J.)). Moreover,

[t]he plaintiff's choice of venue is ... entitled to deference, and therefore the party seeking transfer has the burden to show good cause for the transfer. The burden on the movant is "significant," and for a transfer to be granted, the transferee venue must be "clearly more convenient than the venue chosen by the plaintiff."

*3AT & T Intellectual Prop. I, L.P. v. Airbiquity Inc.,* 2009 WL 774350, at *1 (N.D.Tex. Mar.24, 2009) (Lynn, J.) (footnotes omitted) (quoting *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 315 (5th Cir.2008) (en banc) ("*Volkswagen II*" )).

The court must decide as a preliminary question "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir.2004) (per curiam) ("*Volkswagen I*" ); *Volkswagen II,* 545 F.3d at 312 ("The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue."). Once the court resolves this issue-and K-C does not dispute that this suit could have been brought in the Middle District of Pennsylvania-the court must in deciding whether to transfer the case evaluate "a number of private and public interest factors, none of which are given dispositive weight." *Volkswagen I,* 371 F.3d at 203 (citing *Action Indus., Inc. v. U.S. Fid. & Guar. Co.,* 358 F.3d 337, 340 (5th Cir.2004)).

The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the

avoidance of unnecessary problems of conflict of laws [or] the application of foreign law.

*Id.* (citations and quotation marks omitted; bracketed material added). [FN3] "Although [these] factors are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive." *Volkswagen II,* 545 F.3d at 315. First Quality must establish "good cause" for transferring the case, meaning that, "in order to support its claim for a transfer, [it] must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.' " *Volkswagen II,* 545 F.3d at 315 (brackets in original) (quoting § 1404(a)).

FN3. In reviewing a district court's ruling on a motion to transfer pursuant to § 1404(a), the Federal Circuit applies the law of the regional circuit. *Storage Tech. Corp. v. Cisco Sys., Inc.,* 329 F.3d 823, 836 (Fed.Cir.2003). The Federal Circuit applies the *Volkswagen II* factors in evaluating a § 1404(a) decision made by a district court in the Fifth Circuit. *See In re TS Tech USA Corp.* ., 551 F.3d 1315, 1319 (Fed.Cir.2008) (addressing petition for write of mandamus) (applying Fifth Circuit law and *Volkswagen II,* 545 F.3d at 315).

IV

The court turns initially to the private interest factors.

A

The first private interest factor concerns the relative ease of access to sources of proof.

1

First Quality has adduced evidence that most of its documentation regarding the design, development, and manufacture of its products is located in Pennsylvania. The documents of FQBP and FQP are located primarily in the Middle District of Pennsylvania, and the documents of FQRS are located primarily in the Eastern District. Anthony Silwanowicz ("Silwanowicz"), Director of Product Development for FQP, who is also responsible for product devel-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2634860 (N.D.Tex.)
**(Cite as: 2009 WL 2634860 (N.D.Tex.))**

opment of relevant products produced by FQRS, avers that "[m]ost, if not all, documents relevant to, and personnel involved in, the design, development, marketing, and manufacture of the FQB products identified by [K-C], and listed above, are located in McElhattan, Pennsylvania, where approximately 750 people are employed." Ds.App. 3. "Most, if not all, documents relevant to, and personnel involved in, the design, development, marketing, and manufacture of the FQRS products identified by [K-C], and listed above, are located in King of Prussia, Pennsylvania, where approximately 570 people are employed." *Id.* According to Susan O'Connell ("O'Connell"), Director of Product Development for FQBP, "[a]ll of the documents related to the design, development, manufacture, and marketing of [First Quality's accused new baby diaper product] are maintained in Pennsylvania." *Id.* at 6. "All of the documents related to the design, development, and marketing of the Target Diapers [accused of infringing the ' 343 Patent] are maintained in Pennsylvania." *Id.* at 7. "All of the documents related to the manufacture of the Target Diaper [accused of infringing the '343 Patent] are located either in Pennsylvania or in Georgia." *Id.* The Target Diaper is manufactured in Macon, Georgia, and some documents related to its manufacture are located there. *See id.*[FN4] First Quality contends that K-C's documents are likely located in Neenah, Wisconsin. It bases this contention on the assignments of the patents-in-suit, all of which identify an address for K-C in Neenah, and the fact that the attorneys who prosecuted the patents used the same Neenah address. First Quality therefore maintains that none of the sources of proof can be directly accessed in the Northern District of Texas, but many can be in Pennsylvania.

> FN4. The facilities and equipment used to manufacture the accused products are also located primarily in Pennsylvania, with one facility in Macon, Georgia. Ds.App. 3, 5, and 7. It is not clear from the record, however, that the facilities and equipment are themselves sources of proof in this case, so the court will not specifically consider them in evaluating where the case should be transferred. The location of these facilities does have relevance, however, concerning the second public interest factor (the local interest in having localized interests decided at home), and the court will consider this evidence in that context.

**\*4** K-C argues that the relative ease of access to sources of proof does not favor transfer because the relevant sources of proof are located throughout the country and are equally accessible to both parties in either jurisdiction.

2

The court concludes that this factor favors transferring the case. "The Fifth Circuit [has] held that despite technological advances that [have] made the physical location of documents less significant, the location of sources of proof remains a meaningful factor in the transfer analysis." *AT & T Intellectual Prop.,* 2009 WL 774350, at *2; *see Volkswagen II,* 545 F.3d at 316 ("[T] he sources of proof requirement is a meaningful factor in the analysis." (citing *Volkswagen I,* 371 F.3d at 203)). Much of the relevant evidence can be found in Pennsylvania, where substantial aspects of the allegedly infringing conduct took place. Pennsylvania is the location where all but one of the allegedly infringing products were conceived, designed, and manufactured. Most of First Quality's documentation regarding its design, development, and manufacture of the allegedly infringing products is located in Pennsylvania. The one exception is the "Target Diaper," which is manufactured in Macon, Georgia. But all of the documents related to the design, development, and marketing of the Target Diaper are maintained in Pennsylvania, and some documents related to the manufacture of the Target Diaper are located in Pennsylvania.

K-C maintains that its documents are more accessible in this district because K-C's corporate headquarters are located here. But K-C does not identify any specific proof, or even categories of proof, that are located at its headquarters. *See* P. Br. 11 (arguing that "K-C's corporate headquarters are in the Northern District [of Texas], making documents at K-C's headquarters more accessible," but not identifying the documents, even by general nature or type, or specifying other sources of proof). Although First Quality, not K-C, has the burden of proof on this motion, the absence of such specificity is telling. *See AT & T Intellectual Prop.,* 2009 WL 774350, at *4 (holding that this factor slightly favored transfer where defendant showed that relevant documents resided in transferee district and plaintiff did not show that any relevant documents were located in the Northern District

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2634860 (N.D.Tex.)
**(Cite as: 2009 WL 2634860 (N.D.Tex.))**

of Texas).

K-C contends that access to infringing products is relatively easy regardless of venue because the accused products are distributed and sold by nationwide retailers, and that the accused products are sold in this district. While this is undoubtedly true, it also means that these sources of proof are equally available in the Middle District of Pennsylvania, so that if the case is transferred, these sources (the accused products) and many other sources of proof will all be located in one forum.

K-C also posits that First Quality has multiple manufacturing facilities and offices located in Pennsylvania, New York, and Georgia, so there is no single location that has easy access to all sources of documentary proof. It asserts that while manufacturing occurs in three locations in Pennsylvania, they are located in different judicial districts, and that a fourth location is in Georgia. But the fact remains that the Middle District of Pennsylvania is more convenient for sources of proof in the state of Pennsylvania (regardless of the judicial district in which the proof is found). And First Quality has shown that the design, development, and marketing documents for the accused product manufactured in Georgia (the Target Diaper) are maintained in Pennsylvania, and that development activities are managed from Pennsylvania. In fact, K-C's assertion that "[t]he relevant sources of proof are located throughout the country and are equally accessible to both parties in either jurisdiction [,]" P. Br. 11, coupled with its apparent inability to identify specific sources of proof found at its headquarters, suggest the possibility that its principal place of business for matters relevant to this dispute is actually in Wisconsin rather than in this district. As First Quality points out, all of the patents-in-suit identify a Neenah, Wisconsin address for K-C, *see* Compl. Exs. A-E, and the attorneys who prosecuted the patents also used the same Neenah address.

**\*5** Accordingly, this factor supports transferring the case. *See, e.g., In re TS Tech USA Corp.,* 551 F.3d 1315, 1321 (Fed.Cir.2008) (holding that where all the physical and documentary evidence was far more conveniently located near Ohio venue, district court erred in not weighing this factor in favor of transfer).

B

The second factor concerns the availability of compulsory process to secure the attendance of witnesses.

First Quality concedes in its motion that, although certain categories of third-party witnesses, such as raw material suppliers, customers, and individuals (including inventors or prosecuting patent attorneys who might have left the employ of the parties) might be considered, there is currently nothing to suggest that these witnesses would be unwilling to testify. And First Quality has not identified any witnesses for whom compulsory process will be needed. It admits that this factor is at best neutral. In response, K-C cites various reasons for contending that this factor does not weigh in favor of transferring the case. It does not clearly maintain, however, that this factor weighs in favor of retaining the case in this district.

The court concludes that this factor is neutral. While it does not support transferring the case, it likewise does not support retaining the case here.

C

The third factor is the cost of attendance for willing witnesses.

1

First Quality maintains that, although a limited number of its witnesses may be located in the Eastern District of New York and in Macon, Georgia, *see* Ds.App. 3 and 7, most of its anticipated witnesses are located in Pennsylvania. According to O'Connell, "[a]ll of the people involved in the design, development, manufacture, and marketing of [First Quality's accused new baby diaper product] are located in Pennsylvania." Ds.App. 6. Silwanowicz avers that "[m]ost, if not all, ... personnel involved in[ ] the design, development, marketing, and manufacture of the FQB products identified by [K-C], and listed above, are located in McElhattan, Pennsylvania[.]" Ds.App. 3. And "[m]ost, if not all, ... personnel involved in[ ] the design, development, marketing, and manufacture of the FQRS products identified by [KC], and listed above, are located in King of Prussia, Pennsylvania[.]" *Id.* First Quality contends that many of K-C's likely witnesses are believed to be in Wisconsin, and it points out that the declarant in support of K-C's motion to dismiss the FQBP Pennsylvania action was located in Neenah, Wisconsin. It

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2634860 (N.D.Tex.)
(Cite as: 2009 WL 2634860 (N.D.Tex.))

asserts that Dallas is located approximately 1,200 miles from central Pennsylvania, where most of First Quality's witnesses are located; Dallas is located approximately 900 miles from Neenah, Wisconsin, where most of K-C's witnesses are located; and Neenah is located about 650 miles from Harrisburg, Pennsylvania, meaning that, with a few possible exceptions, the witnesses for both parties are closer to the Harrisburg, Pennsylvania courthouse than to the Dallas courthouse.

*6 K-C counters that the potential witnesses are located throughout the country. It asserts that its witnesses are located in this district and in Wisconsin. Relying on the premise that the court must primarily consider the convenience of key witnesses, it identifies Thomas Mielke, Esquire ("Mielke"), its general counsel, who many years ago prosecuted the '298, '542, and '343 Patents, and who currently works at K-C's corporate headquarters in a Dallas suburb. K-C contends that the decentralized nature of the location of other potential witnesses would merely reallocate the inconvenience and costs to potential witnesses if the case is transferred; that First Quality has failed to identify a single Pennsylvania witness by name and address; that First Quality has not identified any third-party witnesses whose cost of attendance would be reduced by transferring the case; that another court has recognized that a great number of witnesses will be experts who could come from anywhere; and that the speculative nature of the witnesses to be called at trial, coupled with the decentralized nature of the location of all potential witnesses, weighs in favor of retaining the case in this forum.

2

The court finds that this factor is neutral. On the one hand, First Quality has established at a general level that the persons from whom its witnesses are likely to be drawn are largely found in Pennsylvania; that the Middle District of Pennsylvania is geographically closer to Neenah, Wisconsin than is Dallas; and that there is a possibility that most of the willing witnesses in this case will come from Wisconsin and Pennsylvania. On the other hand, K-C correctly points out that First Quality has not specifically identified a single *witness* by name and address. In fact, First Quality's evidence relates to the location of *personnel*, not to the location of *witnesses*. Since this factor focuses on the cost of attendance for willing

*witnesses,* this distinction is material. This court has consistently required that parties seeking a transfer under § 1404(a) "identify the 'key witnesses and the general content of their testimony.' " *Sargent v. Sun Trust Bank, N.A.,* 2004 WL 1630081, at *3 (N.D.Tex. July 20, 2004) (Fitzwater, J.) (quoting *Bank One,* 211 F.Supp.2d at 812).

D

Regarding all other practical problems that make trial of a case easy, expeditious, and inexpensive, the parties agree that this factor is neutral, *see* Ds. Br. 13; P. Br. 14, and the court need not address it in detail.

V

Having addressed the private factors, the court now turns to the public factors.

A

The first public factor is the administrative difficulties flowing from court congestion. First Quality contends that this factor is neutral because transferring the case will not cause procedural delays, and the differences in the median time from filing to trial have reduced significance because patent cases have special rules and procedures that diminish the importance of this statistic.

*7 Citing the Federal Judicial Caseload Statistics, K-C relies on the fact that cases in this district reach trial more quickly than do those in the Middle District of Pennsylvania (24 months compared to 31.2 months). K-C also speculates that the adoption of local patent rules in the Northern District of Texas [FN5] may explain the shorter time to trial, particularly since the Federal Judicial Caseload Statistics reflect 195 patent cases pending in this district versus 33 in the Middle District of Pennsylvania, which has not adopted similar specialized procedures for litigating patent cases.

> FN5. In Miscellaneous Order No. 62 (Apr. 2, 2007), the Dallas Division of this court adopted patent rules on a pilot basis. These rules do not apply outside the Dallas Division unless an individual judge opts to follow them.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2634860 (N.D.Tex.)
(Cite as: 2009 WL 2634860 (N.D.Tex.))

The court concludes that this factor is neutral because the statistics on which K-C relies relate to cases generally rather than to patent cases specifically. *See, e. g., Lear Corp. v. TS Tech USA Corp.,* 2008 U.S. Dist. LEXIS 105072, at *8, 2008 WL 6515201 (E.D.Tex. Sept. 10, 2008) (concluding that this factor was neutral where statistics did not provide data for patent cases). And the court has no basis to find that the Dallas Division's adoption of special patent rules supports the finding that this case will be tried here at a materially sooner point in time than it would be tried in the Middle District of Pennsylvania.

B

The second public factor is the local interest in having localized interests decided at home.

1

First Quality contends that this litigation is truly one of local interest in the Middle District of Pennsylvania, and that the subject matter has no connection to Texas. It cites evidence that FQBP, FQRS, and FQP have facilities in Pennsylvania that manufacture the accused products; FQBP recently built a $200 million facility in that district for manufacturing its new diaper; the new facility employs over 200 people; and the complete design and development of the new diaper took place in Pennsylvania. First Quality also relies on evidence that FQP has a manufacturing facility in the Middle District of Pennsylvania, and all of FQP's accused products are manufactured in McElhattan, Pennsylvania. And it points to proof that, except for the Target diaper, FQRS manufactures all of its accused products at a facility in King of Prussia, Pennsylvania. First Quality posits that Texas is only one of K-C's many places of business and is likely not the most relevant one.

K-C responds that both the residents of the Northern District of Texas and the residents of this district who are employees at KC's corporate headquarters have an interest in litigating this lawsuit here, and that K-C's choice of forum should be given greater deference because K-C resides in this district. K-C maintains that First Quality has failed to cite any relevant case in which a court granted a § 1404(a) motion where the request was made to transfer the case out of the district in which the plaintiff's headquarters

were located. K-C cites as an example the interest of Mielke, its general counsel, who was involved in prosecuting the '298, '542, and '343 Patents. It argues that First Quality's local interests are divided among the Middle District of Pennsylvania, the Eastern District of Pennsylvania, and the Middle District of Georgia. And it contends that no one location has greater weight than another, and that because the transferee venue is not clearly more convenient than the venue K-C has chosen, K-C's choice should be respected.

2

*8 The court holds that this factor favors transferring the case. All three defendants have facilities in Pennsylvania that make the accused products. FQBP recently built a $200 million facility in the Middle District of Pennsylvania that employs over 200 people, and the new diaper was designed and developed in Pennsylvania. FQP has a manufacturing facility in the Middle District of Pennsylvania, and all of its accused products are manufactured in McElhattan, Pennsylvania, where approximately 750 people are employed. Except for the Target diaper, FQRS manufactures all of its accused products at a facility in King of Prussia, Pennsylvania, where approximately 570 people are employed.

Although the court defers to K-C's choice of forum, *e.g., AT & T Intellectual Property,* 2009 WL 774350, at *1 ("The plaintiff's choice of venue is not properly considered as an independent factor in the analysis, but it is entitled to deference"), and it recognizes that K-C's corporate headquarters are located in this district, this case is different in that the location of K-C's most relevant "local interest" appears to be Neenah, Wisconsin. This is the address used for the assignments of the patents-in-suit and for the attorneys who prosecuted the patents. K-C does not explicitly argue otherwise. By contrast, the only local employee who K-C specifically alleges to have an interest in this case is Mielke, its general counsel. So while it is logical to conclude that the outcome of this litigation will have some effect in this district, e.g., on K-C's bottom line, it appears from the record that the effect of successfully prosecuting the patents-in-suit has a more localized interest for K-C in Neenah, Wisconsin.

But for First Quality, the local interest is substantially

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**APP 117**

Slip Copy, 2009 WL 2634860 (N.D.Tex.)
**(Cite as: 2009 WL 2634860 (N.D.Tex.))**

found in the Middle District of Pennsylvania or, to some extent, in an adjacent district in Pennsylvania. Setting aside the one facility located in Macon, Georgia, it is the residents of Middle District of Pennsylvania or an adjacent Pennsylvania district who have a significant interest in whether local manufacturers will be able to continue producing products conceived, designed, developed, and manufactured locally in facilities that employ its denizens and impact the local economy. Moreover, as explained above, Pennsylvania is likely to be more convenient with respect to sources of proof in this case. These reasons all support the conclusion that the Middle District of Pennsylvania has a local interest in having this litigation adjudicated in that district. *See id.* at *6 (holding that residents of the Western District of Washington had local interest in outcome of case where defendant was based there and most, if not all, of its witnesses, evidence, and business operations were there, and finding that this factor weighed in favor of transfer).

This factor weighs in favor of transferring the case.

### C

Both parties agree that the third and fourth public factors-familiarity of the forum with the law that will govern the case and avoidance of unnecessary problems of conflict of laws-are neutral. Ds. Br. 16; P. Br. 16. Accordingly, the court need not address these factors in detail.

### VI

**\*9** Considering all the relevant factors, the court holds that the Middle District of Pennsylvania is clearly more convenient when compared to the Northern District of Texas. The relative ease of access to sources of proof supports transferring this case. Based on the record developed so far, more pertinent evidence is likely to be located there than anywhere else, and certainly more there than in this district. And the Middle District of Pennsylvania has a substantial local interest in litigating the case, whereas this district's interest arises because K-C's corporate headquarters are located here, and K-C's interest is more localized in Neenah, Wisconsin. None of the remaining factors weighs against transferring the case.

Moreover, from the record developed so far, it ap-

pears that the "convenience of parties and witnesses" and the interest of justice are most accurately assessed by analyzing the convenience of this district compared to Neenah, Wisconsin (for K-C and its witnesses) and to the Middle District of Pennsylvania (for First Quality and its witnesses).[FN6] If the case is litigated in this district, K-C's Neenah witnesses will be required to travel farther to this forum than to the Middle District of Pennsylvania, and First Quality's witnesses will be required to travel farther to this forum than to Neenah (or, of course, to remain in their home district). If the case is transferred to the Middle District of Pennsylvania, at least First Quality will be more convenienced. If the case remains in this district, both sides will be inconvenienced. (K-C does not ask, of course, that the case be transferred to Neenah.) It is error for this court to disregard these differences in distance. *See In re TS Tech USA,* 551 F.3d at 1320 (citing *Volkswagen I,* 371 F.3d at 204-05, and holding that it was clear error for district court to disregard Fifth Circuit "100-mile rule" where all the identified key witnesses were in Ohio, Michigan, and Canada, and witnesses would need to travel approximately 900 more miles to attend trial in Texas versus Ohio).

> FN6. To the extent this analysis does not fit precisely within a particular factor, it can still be considered because "[a]lthough [the] factors are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive." *Volkswagen II,* 545 F.3d at 315.

The same analysis applies when considering the evidence that is likely to be produced during discovery and at trial. Apart from testimony and supporting evidence of expert witnesses-who may come from anywhere-the record indicates that it is probable that the bulk of the evidence will be located in Neenah, Wisconsin or in Pennsylvania (and, to some extent, in Georgia and New York) rather than in Dallas. It would therefore promote the convenience of the parties and the witnesses, and be in the interest of justice, to litigate the case in a forum where substantial evidence will be found rather than in one in which there apparently is a relative paucity of proof.

If the court were to deny First Quality's motion on this record, it would not simply be giving deference to K-C's choice of venue; it would effectively be giving this choice controlling weight. This is so because,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2634860 (N.D.Tex.)
(Cite as: 2009 WL 2634860 (N.D.Tex.))

apart from being the location of K-C's corporate headquarters, this district appears to have little to offer in terms of promoting the convenience of the parties and witnesses. For the convenience of the parties and witnesses, and in the interest of justice, this case should be litigated in the Middle District of Pennsylvania or perhaps in the Eastern District of Wisconsin, but not here.

**\*10** This decision does not signal that K-C can never bring a patent infringement lawsuit in this district, where its corporate headquarters are located. Section 1404(a) motions are intensely factual. *E.g., Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc.,* 196 F.Supp.2d 21, 32 (D.D.C.2002) ("A motion to transfer under 28 U.S.C. § 1404(a) requires a factually intensive analysis to determine which forum is more appropriate."). Their outcome ultimately turns on whether the moving party has clearly demonstrated that the case should be transferred for the convenience of the parties and witnesses and in the interest of justice. *See Volkswagen II,* 545 F.3d at 315. Today's ruling should therefore be seen as confined to the facts of this case and to First Quality's ability to make the required clear showing that a § 1404(a) transfer is warranted.

* * *

First Quality's April 2, 2009 motion to transfer is granted, and this case is transferred to the Middle District of Pennsylvania. The clerk of court shall effect the transfer according to the usual procedure.[FN7]

> FN7. Because the court has not relied on First Quality's supplemental memorandum in support of its motion to transfer, the court denies First Quality's July 9, 2009 motion for leave to file a supplemental memorandum as moot.

**SO ORDERED.**

N.D.Tex.,2009.
Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC
Slip Copy, 2009 WL 2634860 (N.D.Tex.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 856466 (N.D.Tex.)
**(Cite as: 2009 WL 856466 (N.D.Tex.))**

⊞Only the Westlaw citation is currently available.

United States District Court,
N.D. Texas,
Dallas Division.
SETTLEMENT CAPITAL CORPORATION INC.,
Plaintiff,
v.
Zulay PAGAN, et al., Defendants.
**Civil Action No. 3:07-CV-1609-O.**

March 30, 2009.

Jeffrey S. Lowenstein, Wendy Ann Duprey, Bell Nunnally & Martin LLP, Dallas, TX, for Plaintiff.

Zulay Pagan, Bronx, NY, pro se.

Kenneth R. Stein, Matthews Stein Shiels Pearce Knott Eden & Davis, Michael S. Alfred, Hallett & Perrin, Dallas, TX, Jenifer N. Smith, Stephen H. Harris, Drinker Biddle & Reath LLP, Philadelphia, PA, for Defendants.

### ORDER

REED O'CONNOR, District Judge.

*1 Before the Court is the November 21, 2008, Report and Recommendation ("Recommendation") of the United States Magistrate Judge (Doc. # 154) recommending that the Court grant Fireman's Fund Insurance Co.'s ("FFIC") Motion for Summary Judgment and Cross-Claim for Statutory Interpleader (Doc. # 51). The Court also has before it FFIC's Partial Objection to the Recommendation ("FFIC Obj.") (Doc. # 167), Plaintiff Settlement Capital Corporation's ("SCC") Partial Objection to the Recommendation ("SCC Obj.") (Doc. # 168), Defendants Seneca One, LLC ("Seneca") and Route 28 Receivables, LLC's ("Route 28") Response to Objections of FFIC and SCC to the Recommendation ("Seneca/Route 28 Resp.") (Doc. # 169), and SCC's Reply thereto (Doc. # 171). 

Having independently reviewed the applicable law, the Recommendation, the relevant briefs submitted by the parties, and responses thereto, the Court affirms the Magistrate Judge's Recommendation for the reasons set forth below.

### I. Background

This is an action for interpleader initiated by FFIC arising out of conflicting claims of and Plaintiffs SCC, Seneca, Route 28 and Pagan to certain periodic payments due under a structured settlement. FFIC filed its Motion for Summary Judgment on May 22, 2008. Doc. # 51. On August 5, 2008, the Court referred this motion, and the parties responses and reply thereto, to United States Magistrate Judge William F. Sanderson for recommendation, pursuant to Rule 72 of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1) (B). Doc. # 108.

The Magistrate Judge issued his Recommendation urging that this Court: 1) grant FFIC's motion; 2) dismiss FFIC as a party to this action conditioned on their pledge to tender into the registry of the Court the sum due under the settlement, $250,000.00 on August 1, 2009; and, 3) grant FFIC's request for attorney's fees, albeit without specifying the amount and allocation thereof until a later date.

FFIC and SCC properly objected to the Magistrate Judge's Recommendation on December 2, 2008. Doc. Nos. 167, 168. However, FFIC's sole objection relates to the recommendation involving the request for attorney's fees "to the extent that it does not reference or consider FFIC's request to supplement its claim for attorney's fees and costs" that was presented in a supplemental motion. FFIC Obj. at 2. SCC likewise limited its objections to the "portion of the Recommendation deferring a ruling on the source of FFIC's attorney's fees," and requested that the Court tax all of FFIC's attorney's fees against Seneca. SCC Obj. at 3.

On December 3, 2008, Seneca and Route 28 filed a Response to the Objections of SCC an FFIC (Doc. # 169) conceding that they "have not filed any objection to the Recommendation" and filed what the Court construes to be argument on SCC's Motion for Leave to Supplement its Response to FFIC's Motion for Summary Judgment. Seneca/Route 28 Resp. at 3. On December 4, 2008, SCC filed its Reply to Seneca and Route 28's Response (Doc. # 171), but did not address further objections to the Magistrate Judge's Recommendation. Thus, for purposes of the Court's *de novo* review of the Magistrate Judge's Recommendation, the Response filed by Seneca and Route

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT
I

PENGAD 800-631-6989

Slip Copy, 2009 WL 856466 (N.D.Tex.)
**(Cite as: 2009 WL 856466 (N.D.Tex.))**

28 (Doc. # 169) and the Reply thereto filed by SCC (Doc. # 171) are not responsive.

**II. Standard of Review**

**\*2** The Court reviews a party's challenge to the decision of a magistrate judge in a dispositive matter pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure. Rule 72(b) requires that objections to the magistrate judge's recommendation on a dispositive motion be "specific written objections." *See* FED. R. CIV. PRO. 72(b)

Once a party has timely filed objections to a magistrate judge's recommendation on a motion for summary judgment, section 636(b)(1) (C) requires that a District Court conduct a *de novo* review of those portions of the recommendation to which the party has objected. 28 U.S.C. § 636(b)(1)(C). Based on its review, the District Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

Rule 72(b) requires that objections to the Magistrate Judge's recommendation on a dispositive motion be "specific written objections." *See* FED. R. CIV. PRO. 72(b). The objections must specifically identify those findings or recommendations which the party wishes to have the district court consider. *Thomas v. Arn,* 474 U.S. 140, 151, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); see also, *Parker v. Cain,* 445 F.Supp.2d 685, 689 (E.D.La.2006) ( ... the failure to pinpoint those portions of the magistrate judge's report that the district court must specifically consider bars the party from a de novo determination by the district judge of an issue covered in the report); *Johnson v. Zema Sys. Corp.,* 170 F.3d 734, 739 (7th Cir.1999) ("... the district court judge must make a de novo determination only of those portions of the magistrate judge's disposition to which specific written objection is made.").

**III. Discussion**

The Court limits its review to those specific objections identified by Plaintiff. *See Parker,* 445 F.Supp.2d at 689; *see also, Johnson,* 170 F.3d at 739. The Court reviews *de novo* the Magistrate Judge's recommendation to grant summary judgment in favor of FFIC and to dismiss them from this action. After reviewing the parties' filed Objections, the Court finds that there are no objections to the recommenda-

tion on these points. Accordingly, the Court determines that FFIC's Motion for Summary Judgment and Cross-Claim for Statutory Interpleader (Doc. # 51) should be and hereby is GRANTED. Moreover, FFIC should be and hereby is DISMISSED from this action, conditioned on their pledge to tender into the registry of the Court the sum due under the settlement, $250,000.00 on August 1, 2009. See, Brief in Support of the Motion for Summary Judgment of FFIC, (Doc. # 52 at 6 (3:07-CV-1609-O) (N.D.Tex. May 22, 2008) ("FFIC has pledged to deposit the Interpleaded Funds in the Court's registry, as they become due").

*Attorney's Fees*

The Court finds that the Magistrate Judge appropriately found that "FFIC is entitled to recover its reasonable attorney's fees" Recommendation at 3, *citing,* 7 CHARLES ALAN WRIGHT, ET AL, FEDERAL PRACTICE AND PROCEDURE § 1719 (3d ed.2001); *see also, Rhoades v. Casey,* 196 F.3d 592, 603 (5th Cir.1999) (A district court has the authority to award reasonable attorney's fees in interpleader actions). The Court also finds that the parties are in dispute as to what the appropriate source of payment for any attorney's fees should be, and this dispute is the subject of various Motions to Leave that have been filed on the docket in this action. (Doc. # 145 (3:07-CV-1609-O) (N.D.Tex. November 11, 2008); (Doc. # 137 (3:07-CV-1609-O) (N.D.Tex. November 3, 2008). As such, in order to determine the appropriate amount and allocation of attorney's fees, the Court finds that this matter should be deferred pending the determination of the parties respective Motions for Leave. Accordingly, the issue of attorney's fees will be resolved by future order of the Court.

**IV. Conclusion**

**\*3** After a *de novo* review of the parties' objections, the Court concludes that the Magistrate Judge was correct in his analysis and the relevant objections are insufficient to persuade otherwise. Accordingly, it is ORDERED that the portions of Magistrate Judge's Report and Recommendation to which the parties did not object should be and hereby are ADOPTED. It is further ORDERED that the objections to the Magistrate Judge's Recommendation are DENIED. For the forgoing reasons, the Court finds that the Report and Recommendation of the Magistrate Judge dated No-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 856466 (N.D.Tex.)
(Cite as: 2009 WL 856466 (N.D.Tex.))

vember 21, 2008 are correct, and they are adopted as
the findings and conclusions of the Court.

**SETTLEMENT CAPITAL CORPORATION,
INC.**

**V.**

**ZULAY PAGAN, SENECA ONE, LLC, ROUTE
28 RECEIVABLES, LLC and FIREMAN'S
FUND INSURANC COMPANY**

*REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE*

WM. F. SANDERSON, JR., United States Magistrate
Judge.

Pursuant to the District Court's order of reference
filed on August 5, 2008, Fireman's Fund Insurance
Company ("FFIC")'s motion for summary judgment
(Doc. 51) filed on May 22, 2008, was referred to the
magistrate judge for report and recommendation.
Upon review of the said motion and the responses of
Seneca One, LLC and Route 28 Receivables, LLC
(Doc. 71), of Settlement Capital Corp. (Doc. 73), and
of Zulay Pagan (Doc. 75) and FFIC's reply (Doc. 81)
and the relevant briefs and appendices, the magistrate
judge finds and recommends as follows:

As part of a settlement agreement and release entered
into by Jorge Pagan, as father and guardian of Zulay
Pagan, and by FFIC on behalf of certain insureds,
FFIC agreed to make scheduled payments to Zulay
Pagan. Under the terms of the periodic payments
FFIC is obligated to make a lump sum payment of
$250,000.00 to Zulay Pagan on August 1, 2009.

On or about April 1.2002. Zulay Pagan executed a
purchase and sales agreement with Plaintiff selling
and assigning her interest in the lump sum payment
to be paid by FFIC on August 1, 2009, to Plaintiff.
*See* FFIC's appendix. Exhibit C.

On or about February 12, 2007, Zulay Pagan ex-
ecuted a transfer and assignment agreement with Se-
neca One LLC selling and assigning $100, 000.00 of
the $250,000.00 lump sum payment to be paid by
FFIC on August 1, 2009. *See* Appendix, Exhibit F.

Upon learning of Zulay Pagan's purported assignment
to Seneca One of a portion of the $250,000.00 lump
sum payment due to be paid by FFIC on August 1,
2009, which Pagan had previously assigned in *toto* to
Settlement Capital Corp., counsel for Settlement
Capital wrote FFIC on September 5.2007, requesting
that FFIC comply with a court order directing FFIC
to pay Settlement Capital the previously assigned
$250, 000.00 lump sum payment on August 1, 2009.
*See* Appendix Exhibit K and Exhibit I at 96, ¶ D.

Seneca One's counsel in turn copied FFIC with a let-
ter addressed to Stone Street Capital, LLC's attorney
setting out Seneca One's claim to $ 100,000.00 of the
$250,000.00 payment to be made on August 1, 2009.
FFIC's claims representative was copied with the
letter as well. Appendix. Exhibit L. Aside from any
differences which may exist between Seneca and
Stone Street Capital, referred to in the letter, it is
abundantly clear that entitlement to the $250.000.00
to he disbursed on August 1, 2009, is hotly disputed.
Seneca One and Route 28 Receivables, LLC, Settle-
ment Capital and Zulay Pagan do not join issue on
the appropriateness of FFIC'S statutory interpleader
action pursuant to 28 U.S.C. § 1335, as a general
principle. However, two issues are raised regarding
whether FFIC's motion for summary judgment should
be granted at this time.

**\*4** FFIC is not presently obligated to disburse the
$250,000.00 payment. In its motion and brief FFIC
pledges that if its motion for summary judgment is
granted it will deposit the sum on August I, 2009.
Seneca One and Route 28 argue that this pledge is
insufficient to satisfy the requirement that the pay-
ment be placed into the registry of the court. I find
the disposition made by the court in *Allstate Settle-
ment Corp.* and *Allstate Life Ins. Co. v. United States,
et al,* No. 2-07-05123-RB, *See* FFIC's Supplemental
Appendix, to be correct. Further, in the Fifth Circuit's
decision in *Murphy v. The Travelers Ins. Co.,* 534
F.2d 1155, 1165 (5th Cir.1976), the court held that an
obligor's offer to place disputed funds into the regis-
try of the court constituted a sufficient unconditional
tender of disputed funds. Therefore, the fact that
FFIC does not wish to tender the $250,000.00 into
the registry of the court until August 1, 2009, does
not bar summary judgment in its favor when FFIC
has pledged to abide by the terms of any settlement
agreement or any order of the court requiring the ten-
der of the $250,000.00 on August 1, 2009.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 856466 (N.D.Tex.)
**(Cite as: 2009 WL 856466 (N.D.Tex.))**

END OF DOCUMENT

The second issue relates to the amount of attorneys' fees due to FFIC and the source of such fees. The affected parties do not dispute the fact that the court has the authority to award a disinterested stakeholder its costs including attorneys' fees. Plaintiff argues that the attorneys' fees should be taxed against Seneca One and/or Route 28 and Zulay Pagan, while Seneca One and Pagan argue just the opposite.

FFIC initially took no position with respect to the source of the money for reimbursement of its attorneys' fees-that is either from the deposited funds or from the remaining parties. However, in its reply FFIC seeks an additional $6999.00 from Seneca One occasioned by additional services performed in researching and replying to Seneca One's response to FFIC's motion for summary judgment. While it is clear that FFIC is entitled to recover its reasonable attorneys' fees. *See* 7 Wright, el al. *Federal Practice and Procedure* § 1719, determination of the amount to be awarded and the source(s) of such amount should be deferred pending disposition of the disputes between the claimants to the $250,000.00 scheduled lump sum payment.

*RECOMMENDATION:*

For the foregoing reasons it is recommended that Fireman's Fund Insurance Co.'s Motion for Summary Judgment and Cross-Claim for Statutory Interpleader (Doc. 51) be granted and that the District Court enter its order dismissing Fireman's Fund as a party to this action conditioned on Fireman's Fund agreement to tender into the registry of the court the sum of $250,000.00 on August I, 2009, and the District court further grant Fireman's Fund's request for attorneys' fee, but defer entering its order setting the amount of such fees and the source(s) of the same until a later date.

A copy of this recommendation shall be transmitted to counsel for the parties.

**\*5** SIGNED this 21st day of November, 2008.

N.D.Tex.,2009.
Settlement Capital Corp. Inc. v. Pagan
Slip Copy, 2009 WL 856466 (N.D.Tex.)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.